CASE 77.—ACTION BETWEEN WILLIAM CORNWALL, Jr.,
        AND ANOTHER, AND SALLY W. C. HILL AND
        ANOTHER FOR THE CONSTRUCTION OF A WILL.
        March 19, 1909.

# Cornwall, &c v. Hill, &c.

Appeal from Jefferson Circuit Court (Chancery
Branch, First Division).

SHACKELFORD MILLER, Judge.

From the judgment William Cornwall, Jr., and
another appeal.—Reversed.

1.  Wills—Construction—Time of Taking Effect.—Ky. St.1909, Sec.
    4839 (Russell's St. Sec. 3962), provides that "a will shall be con-
    strued * * * to speak and take effect as if executed imme-
    diately before the death of testator, unless a contrary in-
    tention appears." Held, that where it appears that a will
    was made in contemplation of a settlement with creditors,
    and a conveyance for carrying out that plan was made in
    about a month after its execution, the will should be read as
    speaking from the date of conveyance rather than that of its
    execution.
2.  Wills—Construction—Equality of Beneficiaries.—The con-
    struction of the will, which produces equality is preferred to
    one that produces inequality, and it will not be presumed
    that testator intended to prefer one of his children to the
    others, unless this appears from a fair reading of the will.
3.  Wills—Construction—Division of Property.—A will construed
    with reference to the condition of testator's property and the
    contemplated compromise and settlement with creditors, and
    held, that testator intended to divide his estate equally be-
    tween his three children, and that the daughter was not en-
    titled to a one-third interest in a certain factory before a
    division of the estate.

D. W. FARLEIGH AND ALFRED SELLIGMAN counsel for ap-
pellants.

The following rules of law with reference to the construction of wills may be aidful:

1. The presumption that the testator intended to make an equal distribution of his estate among his children and the construction which will produce equality· is to be preferred over¯one which will produce inequality.

2. Extrinsic facts may be considered by the Court in construing a will, to "enable the Court to place itself in his situation, to see things as he saw them, and to apply his language as he understood and intended it. Page on Wills, Section 817.

3. The general intent of the will must be given effect. In the case at bar there is a general equal devise of all the estate, real and personal. This general intent must be given effect.

### AUTHORITIES CITED.

Hill, etc., v. Cornwoll & Bros. Assn., 95 Ky., page 512; Page on Wills, Section 817; Page on Wills, Section 463.

BODLEY & BASKIN for appellees.·

### CLASSIFICATION OF QUESTIONS DISCUSSED AND AUTHORITIES CITED.

1. Where a testator devises all his property to three children and by a later clause makes a special ·devise to one of them, the special devise must be paid and the residue divided under the general clause.

2. Effect must be given to all clauses of a will, and they must be reconciled if possible. Moss v. Cross, 17 B. Mon., 735; 29 Am. & Eng. Ency., 350 and 363; Hunt v. Johnson, 10 B. Mon., 342; Jacob v. Jacob, 4th Bush, 110; Howard v. Howard, 4th Bash, 495; Adie v. Cornwell, 3 T. B. M., 279; Delph v. Delph, 2nd Bush, 171; Proctor v. Duncan, 1st Duvall, 318; Hickman v Holliday, 6 T. B. M., 582.

3. If all clauses can not be reconciled, the last clause making a special devise must prevail. (Same authorities.)

4. A later clause is not repugnant to a· former clause unless it entirely destroys it. It if does destroy it, the later clause stands. Sweet v. Chase, 2nd N. Y., 73.

5. The title to property specially devised passes as of the death of testator's death, and the income from that property vests immediately in the devisee. 49 Century Digest, column 2709, and citations.

6. Where a special devise is used for payment of general debts, whether interest is thereby stopped or not, the devisee is entitled to interest with annual or biennial rests. In this case

only simple interest was allowed. Page v. Holeman, 82 Ky., 576; Montjoy v. Lashbrook, 2 B. M., 261; Celmons v. Caldwell, 7 B. M., 171; Grigsby v. Wilkinson, 9th Bush, 91.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

William Cornwall, Sr., died testate, a resident of Jefferson county in March, 1895, leaving three children surviving him, two sons and a daughter. His will was duly admitted to probate, and this controversy has arisen between his children as to its construction, the two sons insisting that the estate is left to the three children equally, and the daughter that one-third of the property known as the "factory of Cornwall & Bro." goes to her in addition to one-third of the estate. The will, after a clause appointing the two sons as executors without bond, as far as material, reads as follows:

"I give all my real and personal property I may die possessed of to my executors, or executor, in trust for the purposes named in this, my last will, and my rents or incomes of my estate, after paying taxes, insurance and repairs shall be equally divided among my children, viz: My sons, William and Aaron W. Cornwall, and my daughter, Sally W. Hill. Any interest I may have in the manufacture of soap and candles at the time of my death may be continued by my executors or executor with my sons as partners or at the election of my sons be continued as stock in a manufacturing corporation, or invessted in the stock of a corporation that may be formed for manufacturing soap and candles; or my sons may take my interest at its value as shown by the books at the time of my death and pay for the same in one- two and three years time, without security, paying interest at the

rate of six per cent. per annum.   The value of my interest shall be ascertained by taking stock at the usual time which is any of the summer months when candle market is usually stopped.   Or the stock may be taken if my sons so elect to do so, as near the time of my death as may be deemed to involve the least loss of time and business.   And the election herein-above may be exercised by my sons after taking the account of stock.   My daughter's share of any money coming to her under this will, or her share of any real estate shall be held by my executors, or executor, in trust for her separate use, free from the control of any husband she may have, and she may will it to any child or children she may have who may survive her.

"The income from rents or dividends, if any that may accrue for my daughter, shall be paid to her only on her receipt, free from any debt or claim of any husband she may have.   She shall not anticipate the income by drawing orders or by creating debts or pledging it for any purpose, and if she should the amount so anticipated or pledged shall be forfeited and distrib-uted to my other children then living, or to their de-scendants then living. And in the event of any husband she may have surviving her, said husband shall have no estate of curtesy in said property of my daughter nor any interest therein by virtue of his married rela-tion.   In the event that the portion of the factory known as the factory of Cornwall & Bro. now belong-ing to my daughter, should again become my prop-erty, I devise said portion to my daughter and her heirs forever as her separate estate, free from the control of her husband, R. E. Hill, or any husband she may have and it shall not be subject to any right of curtesy or any other right in or to him by virtue

of his marriage to my daughter or by virtue of any other circumstance or condition whatever. I direct that no debt or claim which I may now have or here- after have against my children or either or any of them shall be made against them or either or any of them; but that all and every one of said claims or debts against my children or any of them shall be con- sidered as paid and cancelled to the full extent as if there never had been any claim against them or either of them. And I expressly direct that no claim or debt that I now have against my children or either of them or any of them shall ever be considered as an advance- ment to them or either of them; and that under no circumstances shall any debt or claim I may now have or may hereafter have against any of my children or either of them be subject to the rule or principle of advancement.''

To understand the will it will be necessary to read it in the light of the facts surrounding the testator at the time. William Cornwall and John Cornwall, do- ing business under the name of Cornwall & Bro., operated a candle and soap factory in Louisville for many years before the death of John Cornwall, which occurred in the year 1867. After his death the prop- erty was sold and was bought by William Cornwall, Jr., who conveyed two-thirds of it to his father, re- taining one-third himself. They continued to run the manufacturing business in the name of Cornwall & Bro. In 1874, when Aaron Cornwall became of age, William Cornwall, Sr., conveyed to him a one-third interest in the factory property; the two sons and the father operating it from that time on in the old name of Cornwall & Bro. In 1875, the daughter having be- come of age, the father conveyed to the two sons the remaining third of the property which he then owned

in trust for her use, reserving in himself the power of revocation; the firm paying her as rent $1,000 a year. Thus things ran along until 1891, when the firm, having become insolvent, made an assignment for the benefit of their creditors; their debts amounting to about $350,000. The assignee proceeded with the settlement of the trust and paid several dividends to the creditors. In the year 1894 the Cornwalls undertook to make a compromise with their creditors, and finally did make a settlement on the basis of $60,000. To raise the $60,000 it was arranged that William Cornwall would revoke the deed to the daughter, and the two sons would convey to him their interest in the factory property, and he would then convey this property, together with some other land he had in Texas and a warehouse property owned by him and his sons, to the Louisville Trust Company, the Louisville Trust Company to furnish him $60,000, and to sell the land when a sale could be made, so far as necessary, and to convey back to William Cornwall, Sr., so much of the property as was left after the payment of the debt. The arrangement was carried out, the deeds were made, and the creditors were settled with. The will is dated November 24, 1894. The agreement between the parties as to the conveyance of the property to the Louisville Trust Company was made on December 4, 1894. The deeds were executed on January 2, 1895. William Cornwall, Sr., died the following March. After his death in the year 1900 the Louisville Trust Company sold the factory property and the warehouse property for $30,000. Its debts then amounted to something over $23,000, and it turned over the surplus to the executors of William Cornwall, Sr. It is conceded that the factory property in this sale brought $14,000. Mrs. Hill insists

that one-third of this, with interest, should be paid to her.  Whether she is entitled to it or not depends upon the question whether the event took place that the third of the factory property belonging to Mrs. Hill again became the property of William Cornwall, Sr.  It is evident from the will as a whole that the testator, at the time the will was made, contemplated reopening the factory and running it as before.  What he had in his mind was that after the creditors were paid, and he got his affairs straightened out, he wish-ed his daughter not to lose by the revocation of the deed of trust in her favor.  While the will was made on November 24th, and the written agreement for the conveyance of the property on December 4th, and the deeds were not made until nearly a  month afterwards, still it is perfectly manifest from the will that the will was written in contemplation that the composition with the creditors should be carried out, and it should read as speaking rather from that time than from the date of its execution, pursuant to section 4839, Ky. St. (Russell's St. Sec. 3962) :  ''A will shall be construed with reference to the real and personal estate com prised in it, to speak and take effect as if it had been executed immediately before the death of the testator unless a contrary intention shall appear by the will,''

In the contract of December 4th, it is provided that the conveyance to the trust company shall be upon trust that it shall collect all choses in action assign-ed to it, and sell so much of the land as may be neces-sary, and that, as soon as its debt was paid, all the residue of the property should be ''the individual property of William Cornwall, Sr.,'' and should be conveyed by the trust company to him.  When the testator speaks in the will of the event of the factory property again becoming ''my property,'' he evident-

ly had in mind the event of the trust company reconveying the property to him after the payment of his debt, as specified in this written contract. By the deed which he made to the trust company, it was provided that the deed was made "to the end that the title to said entire property known as the factory property shall be vested in fee simple in said Louisville Trust Company." At the time of his death the title to the property was in the Louisville Trust Company. What he contemplated was that, if he and his sons got the factory property back, he wished his daughter to be placed where she was before he revoked the deed of trust for her benefit; but he died without getting the property back. At his death the title to the land was in the Louisville Trust Company, and all that he had was an obligation on the part of the Louisville Trust Company to convey back to him the remainder of the property left after the payment of the debt to the trust company. The title to the factory property was not in him when he made his will, and although the two sons conveyed to him their interest in it, this interest was charged with the debts of the firm which had to be settled, and their conveyance to him was only made that he might convey the entire property to the trust company, so all these deeds should be read together; their evident purpose being merely to pass the title through him to the trust company, and not to vest any title in him, until the $60,000 was paid.

Taking the will as a whole, it leaves no doubt that the testator was equally devoted to all three of his children. He had not in mind giving one a preference over the others. His sole purpose, as exhibited by the whole instrument, was to treat them all alike and with exact justice. He did not intend that a

sum equal to one-third of the proceeds of the factory property should be paid to his daughter out of his estate before the two sons received anything from the estate. The careful wording of the will to the effect that no advancements are to be charged, when read in connection with the words directing an equal division among the three children, forbids such a conclusion. The construction of a will which produces equality is preferred to one that produces inequality, and it will not be presumed that the testator intended to prefer one of his children to others, unless this appears from a fair reading of the will. The whole will here shows a purpose on the part of the testator to put all his children on equality without regard to what had theretofore been received by each of them. To adopt the construction of the will urged by the daughter would be in effect to make the value of her one-third of the factory property a first charge upon his whole estate left after the payment of the debts, in the event the testator revoked the trust deed to her. That is not the event he had in mind. He had in mind the event of getting back his property and going on again with the business of Cornwall & Bro., as shown by the preceeding words of the will. The revocation of the trust to the daughter was only a step to vest the property in the trust company. The event he had in mind was the property revesting in him. It would then be his to devise. If at the date of the will he had revoked the deed of trust to his daughter and had stopped there, he would have had no interest in the factory property to devise to her, for his creditors would then have subjected the property to their claims. He had at that time no interest in the manufacture of soap and candles to devise, for he had assigned everything for the payment of his debts. All

this part of the will must therefore be regarded as prospective and as made in contemplation of the composition with his creditors which he had in hand, and in view of a subsequent carrying on of his business after his debts were settled; but he died the following March, before his plans were carried out, and before the portion of the factory property then owned by his daughter became his property within the meaning of the will. We are therefore of opinion that the three children will take the estate equally under the will.

Judgment reversed and cause remanded for a judgment as above indicated.