## Campbell, et al. v. Hinton, et al.

(Decided November 14, 1912.)

Appeal from Henry Circuit Court.

Wills—Devise to Wife—Remainder to Heirs—Death of Heir in Life-
time of Widow.—Under a will by which the testator devised all
his property to his wife for life with remainder at her death to
his heirs at law, the heirs at law take a vested estate at the
death of the testator, which is not defeated by the death of the
heir in the lifetime of the widow.

TURNER & TURNER for appellants.

MOODY & BARBOUR and W. P. THORNE for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

Ned Hinton died a resident of Henry County in May,
1908, the owner of a lot in Eminence, Kentucky. He left
surviving him his wife, Mary, and a son, John Hinton.
His will which was duly admitted to probate is in these
words:

"I, Ned Hinton, of color, of Eminence, Kentucky,
being of sound mind do make and publish this paper as
my last will and testament, revoking all others, having
made practically this same will with slight changes on
the 16th day of April, 1904.

"1.   I want all my just debts paid and funeral ex-
penses as soon after my death as found convenient.   I
want included in funeral expenses a suitable tombstone
erected at my grave.

"2.   I want my four nephews, Davy Lee Long,
Horace Long, Charley Wade, and Howard Gray (Mat
Green's cripple boy) to have a home with my wife dur-
ing her life, but they are to look after her and wait on
her long as she lives.

"3.   I will and bequeath to my wife, Mary, all my
property real, personal and mixed during her life, at
her death what of it that is left is to go equally to my
heirs at law, my object is to keep my property in the
Hinton family.

"4.   I will to my son, John Hinton, twenty-five dol-
lars, in addition to a home with my wife if he wants to
live here, this is in addition to his rightful share of my
estate after the death of my wife.

"5. I appoint my lawyer, W. P. Thorne, my executor of this my estate with power and authority to qualify without bond and want my family to consult him about their business, and in event she at any time comes to the conclusion it would be best to sell any of my property, or all of it, he, my executor, is authorized to convey same by deed making to the purchaser good title the same as if done by me and my wife while living, this is done to save looking up all the heirs or getting a decree."

After his death, the son, John Hinton, died of age and before his mother. She is now dead and this controversy has arisen, between the kindred of Ned Hinton and her kindred as to the ownership of the property. It is insisted for her kindred that under the will, John took a vested remainder, which at his death passed to his mother, and at her death to them. It is insisted for the kindred of Ned Hinton that John Hinton took a contingent remainder which was defeated by his death before his mother; and at her death the property passed to them under the will of Ned Hinton. The circuit court entered a judgment in favor of the kindred of Ned Hinton. The kindred of Mary Hinton appeal.

We do not see that this case can be distinguished from the case of Weil v. King, 104 S. W., 380. In that case the testator left his property to his wife for life directing that all of it at her death should be equally divided between his heirs. The same contention was made there as here; and in response to it, we said:

"The following elementary rules for distinguishing a vested from a contingent remainder have been approved by this court (Mercantile Bank of New York v. Ballard's Assignee, 83 Ky., 481, 4 Am. St. Rep., 160): The mere fact that an estate is to take effect and be enjoyed after the termination of an intervening estate will not prevent both estates from being vested at the same moment."

"It is not the uncertainty of enjoyment in the future, but the uncertainty of the right to that enjoyment, which marks the distinction between a vested and contingent interest." 4 Kent's Commentaries, 206. "The present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant, before the estate limited in remainder determines, universally distin-

guishes a vested remainder from one that is contingent.''
2 Chitty's Blackstone, p. 169, note 10; Walters v.
Crutcher, 15 B. Mon., 10. ''There can be no question
that the tendency of the more recent decisions is clearly
in favor of holding an estate in remainder vested where
that can be fairly done without too great violence to the
language used.'' 2 Redfield on Wills (3rd Ed.), 232. In
this case the persons to take were certain. The conten-
tion that the word ''heirs'' makes them uncertain is
without merit. It is only where the limitation is to the
heirs of a person in existence that the remainder is con-
tingent upon the theory that ''nemo est haeres viven-
tis.'' For instance, if the devise had been to Hulda
Moore for life, remainder to her heirs, the remainder
would have been contingent, unless it appeared that the
word ''heirs'' meant, children, for it would have been
impossible to ascertain who her heirs were until her
death. This devise, however, is to the wife for life, re-
mainder to the testator's heirs. Under the well known
rule that the will speaks as of the date of the death of
the testator, unless a contrary intention appear, the tes-
tator meant his heirs living at the time of his death.
Who then were his heirs? Manifestly his children and
grandchild.   *   *   *   There was no uncertainty of
the right of enjoyment because the remaindermen were
in existence and could take. The enjoyment itself, how-
ever, was uncertain, in as much as the life tenant might
live longer than the remaindermen, as did happen in the
case of the grandchild. But this did not affect the vested
character of the estate, for there was no limitation over
nor other contingency by which the estate would be de-
termined. Charles Moore having a vested interest in the
property in question, it passed to his mother at his
death.''

In this case at the death of Ned Hinton, John Hinton
was his heir at law and the remainder subject to his
mother's life estate then vested in him. It will be ob-
served that the will is the same with some slight changes
as a previous will made on April 16, 1904. The testator
could not know that his son, John Hinton, would survive
him. He desired the property to go to his heirs at law,
and he could not know who would be his heirs at law at
his death; but when he died this fact became certain, and
it was then ascertained that John Hinton was his heir
at law. He intended to keep the property in the Hinton

family, and it was kept in the Hinton family when it went to John at his death. He did not make any devise over beyond this. The heir at law took an absolute estate under the will at his death.

Judgment reversed and cause remanded for a judgment as above indicated.