## Armstrong, et al. v. Crutchfield's Exors., et al.

## Green, et al. v. Tadlock.

(Decided November 19, 1912.)

## Appeals from Boone Circuit Court.

1. Wills—"Equally Divided Between"—Construction.—This court has invariably construed the term "equally divided between," when used in a will, as providing for a per capita distribution, when there is no other language in the will showing a different intention.

2. Wills—Construction of.—Where a testator, provided that his wife should dispose of one half of all the property left by him, and directed that the remaining half be divided equally among his nephews and nieces, naming them, except the children of D. A. Russell, which he did not name, that fact is not of itself a circumstance sufficient to change the canon of construction which provides for a per capita distribution.

3. Wills—Character of Estate Devised.—The property in dispute is to be considered as personal property, and under the will Mrs.

Savier owned a vested interest in remainder in it at the time of her death, and her surviving husband took this property subject only to the use of the widow as provided in the will.

BENNETT H. YOUNG and HENRY G. BEDINGER for appellants, Armstrong, et al.

C. C. BAGBY for appellants, Green, et al.

ERNST, CASSATT & COTTLE for appellee, Fidelity Trust Co.

BYRNE & REED for appellees, Davenport and Tadlock.

FORMAN & FORMAN for appellee, Georgi.

ARNOLD & CURTIS for appellee, Nichols.

LELLYETTE & PRICE for Nashville Trust Co.

C. C. BAGBY for appellees, Hattie Taylor, et al.

TOLIN & VEST for appellees, Hattie Taylor, et al.

JOHN S. GAUNT for appellee, Tolin.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

The proper construction of the will of B. F. Crutchfield, which was probated in Boone County in 1855, constitutes the sole question upon the appeal in the first styled case. His widow lived until 1910, and when she died the right to the possession of the property devised by the third clause of his will passed to the devisees named therein. The second and third clauses of the will are as follows:

"2nd. I also bequeath to my wife, Susan, Fifteen Thousand Dollars, to be invested in good interest paying stocks or loaned on Bond and mortgage in a secure manner, and the interest to be regularly paid to her during her life and at her death I wish her to will or dispose of one-half of all the property and money left her as she may desire or think fit; the other half

"3rd. I wish equally divided between my niece Jane Crutchfield, James Davenport (son of my nephew Jas. Davenport, Dec'd.), John Savier and Betty Savier (son and daughter of my sister Agnes), Ben Crutchfield (son of my brother Richard) and the children of D. A. Russell by his wife Susan," &c.

The parties concede that there is nothing and we cannot find anything in the will to show or indicate

whether the testator intended for them to take per capita or per stirpes. This court has invariably construed the term "equally divided between," when used in a will, as providing for a per capita distribution, when there is no other language in the will showing a different intention. See the cases of Wells, &c. v. Newton, &c., 4 Bush, 158; Brown's Exor. v. Brown's Devisees, 6 Bush, 648; Purnell, &c. v. Culbertson, 12 Bush, 369; McFatridge, &c. v. Holtzclaw, 94 Ky., 352; Hughes, &c. v. Hughes &c., 118 Ky., 751; Potts v. Shirley, &c., 90 S. W., 590, and Kaufman, &c. v. Anderson, 31 Ky. L. R., 888. In Purnell v. Culbertson, supra, the language of the will construed was as follows:

"At her death I wish the real estate and such of the personal property as my wife may not have disposed of divided equally between my nephew, Julian Culbertson, of this county, Mattie Ervine, Etene Case and the children (two) of Thomas D. Purnell, nieces and nephews of mine, and residing in and about Natches, Miss."

In that case, the lower court determined that the children of Thomas Purnell should receive jointly only a share equal to a share of either of the others; that is, they should take per stirpes. This court took a different view, and cited many authorities in support of its construction, from one of which it quoted with approval, the following:

"It is said that the words 'equally to be divided,' when used in a will, mean a division per capita and not per stirpes, whether the devisees be children and grandchildren, brothers or sisters, nephews or nieces, or strangers in blood to the testator."

It is also said in that opinion:

"So it is plain the testator did not intend to follow the laws of descent and distribution in the division of his estate among these collateral kindred, nor did he intend to give to each class of children what their ancestor would have been legally entitled to had he been living; but, on the contrary, we are of opinion that the testator intended that his entire estate at the death of his wife should go to the devisees named, to be equally divided between them per capita, share and share alike."

In Hughes v. Hughes, &c., supra, the provisions of the will construed provided that all of the remainder of the testator's estate should be divided equally among

the children of Barney and James Hughes, both of whom were dead at the date of the execution of the will. James Hughes' family consisted of four children, two sons and two daughters, one of whom, Francis Hughes, had no interest under the provision, as he had been expressly excluded. The family of Barney Hughes consisted of a wife and six children, and they contend for that construction of the will which compels a division of the property per capita, while the children of James contend for a division per stirpes. This court said in substance that whatever might be the rule of construction in other States, it was not an open question in this jurisdiction; then cited and commented upon other cases and reached the conclusion that one-half of the estate devised under that clause of the will should be divided per capita between the children of both brothers; that is, three-ninths to the children of James and six-ninths to the children of Barney.

Appellants cite the cases of Lachland's Heirs v. Downing's Exor., 11 B. Monroe, 32, and Bethel, &c. v. Major, &c., 24 Ky. L. R., 398 (68 S. W., 631), as authorizing the construction given by the lower court to clause three of Crutchfield's will. In the first case cited the clause of the will construed was as follows:

"All the residue of my estate whether real, personal or mixed, not herein otherwise disposed of, I desire may be equally divided after my death between my brother John Downing, my two sisters, Elizabeth Cameron and Nancy Gibson and the children of sister Nelly Lachland, to them and their children forever, it being my desire that the portions allotted to my brother John and my two sisters and the children of my deceased sister Nelly Lachland shall be made as nearly equal as possible, both in kind and amount."

The court determined in that case that the children of Nelly Lachland, collectively and not individually, took an equal share; that is, a one-fourth part of the residue devised under the clause of the will copied, and that John Downing, Elizabeth Cameron and Nancy Gibson each took a fourth part. In other words, it was determined that the children of Nelly Lachland took per stirpes; and in arriving at this conclusion, the court considered the whole will and concluded, from its tenor, that such was the purpose of the testator, saying:

"But where the testator shows such solicitude to effectuate that justice which consists in equality of distribution among those who were equally the objects of his bounty and affection, we should deem it proper, and indeed necessary, in the absence of any peculiar fact or expression of a contrary tendency, to presume the testator's feelings and benevolence flowed in the usual channels, and to construe all ambiguous expressions in conformity with this presumption. Then, as no reason appears why the testator who is so particular in desiring equality between his living brothers and sisters, should place the children of a deceased sister each upon an equality with the living brethren we should expect and require some clear and unequivocal indication of such an intention in order to establish its existence."

Thus we see that if there had been nothing in the will to indicate the intention of the testator, other than the words "equally divided between," the result would have been different.

The other case, Bethel, &c. v. Major, &c., supra, construed the will under consideration in that case, as a whole, and the court reached the conclusion that the will devised the property to the children of Mary Bethel as a class. That case does not conflict with the authorities cited.

In the case at bar there is nothing in the will to indicate that Crutchfield devised the property to the children of D. A. Russell as a class. Nor is there any thing to indicate any solicitude on the testator's part to effectuate that justice which consists in the equality of distribution among those equal objects of his bounty and affection. There is nothing to indicate that he desired his property to pass to his nearest of blood kin. All the persons named in the clause of the will were his nephews, nieces, grand-nephews and grand-nieces. It is also a significant fact that at the time the will was executed that the mother of Jane Crutchfield, James Davenport, Agnes Savier and Richard Crutchfield had other children, or at least, a part of them had, to whom no property was devised by the will. It is apparent that he selected only such of the children as he desired to take his property and named or referred to them in the clause of the will copied, showing that his feelings and benevolence did not flow in the usual channels, and that he did not desire that his property be distributed

in the ordinary manner; that is, to his next of kin. The fact that he did not name the children of D. A. Russell is not a circumstance sufficient of itself to change the canon of construction as established by the authorities referred to. Therefore, we have concluded that the lower court erred to the prejudice of D. A. Russell's children.

The question involved in the second styled case, which is prosecuted on the same record as the first, arises out of the following facts: Betty Savier, who is named in the clause of the will quoted, became the wife of John Tadlock. She died in 1858 and left her husband, but no children, surviving her. As stated, the will was probated and took effect in 1855. The lower court determined that John Tadlock, as surviving husband, was entitled to what ever interest she had under the will of Crutchfield. Appellants contend that she had no interest under the will that would pass to her husband, and cite authorities as sustaining their contention which construed the Common Law or some statutes in force prior to the enactment of the Statutes of 1851 and 1852, which were in existence at the marriage and death of Betty Savier. This statute provides that the husband of a deceased wife was entitled to the whole of her personal estate. The questions then are: Is the property in dispute to be considered personal property? And did Mrs. Savier own it at the time of her death? Without doubt, the first question must be answered in the affirmative, and in our opinion, she owned a vested interest in remainder in the property at her death. It was hers from the date of the death of the testator, Crutchfield, subject only to the contingency and use of the widow, Mrs. Crutchfield, during her life. See the cases of Weil v. King, 31 Ky. L. R., 1010; Arnold's Exor. v. Arnold's Admr., 11 B. Monroe, 81; Holeman, &c. v. Landes, &c., 2 Bush, 158, and Campbell v. Hinton, 150 Ky., 546. Therefore, we conclude that appellee, Tadlock, as surviving husband and only heir, took this personal property of his wife subject only to the use of the widow, Mrs. Crutchfield, as provided in the will of her husband. The lower court was correct in adjudging him Betty Savier's interest in the fund, but erred in allowing him too much, as hereinbefore indicated.

The judgment is reversed and remanded with directions to the lower court to distribute the fund as directed in this opinion.