# Howard's Ex'r et al. v. Dempster.

(Decided Nov. 25, 1932.)

P. M. BASHAM and MOORMAN, WALLS & BEARD for appellants.

JAMES & JAMES, H. L. JAMES, and ALLEN R. KINCHELOE for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

William Ashby Howard died at Ft. Bragg, N. C., on September 1, 1925. He was a member of the regular army of the United States and had been stationed at Ft. Bragg for a number of years prior to his death. He was a resident of Breckinridge county, Ky., where a farm owned by him was located. After his death, an administrator of his estate was appointed by the Breckinridge county court. Thereafter a paper was found which was probated by the Breckinridge county court as the last will and testament of Howard, and Charles W. Owen was permitted to qualify as executor of the will.

An appeal from the order of the county court pro-

bating the paper as a will was filed in the Breckinridge circuit court and that court adjudged the paper void for uncertainty and insufficiently testamentary in character to be probated as a will and reversed the order of the county court admitting it to probate as the last will and testament of the decedent. The paper in question reads as follows:

"Headquarters Battery 'B' 2nd F. A.
"Fort Bragg, N. C.
"November 29th, 1922.

"To Whom It May Concern:

"I, William Ashby Howard, being of sound mind and has this the 29th day of November, 1922 turned over to Mr. Chas. W. Owen, a resident of Glen Dean, Ky. all property belonging to me in the County of Breckinridge State of Kentucky, this land to be cultivated and returned to me whenever I call for the same later on I hereby appoint Mr. Chas. Owen and my whole and soul beneficiary, if this land should have to be divided at my death I appoint him legally to divide the following way as follows:

"Miss Lucile Isabel Moore, Fisher, Ky. my cousin to have one-half after all debts are paid, Mr. Charles W. Owen my uncle to have one-half the same as Miss Moore.

"I further certify that this land is to be looked after by Mr. Owen at all times until he sees fit to turn it over to any else upon my approval.. I certify that this letter was signed in my presence this date as shown above.

"Witness: Felix Lappello
"Address c/o Mrs. E. Schawank,
Barrington, Ill.

"Witness: Duncan McDeod,
"Address Bat. B. 2nd F. A.

"William A. Howard
"Sup. Sgt. Btry 'B' 2nd F. A. Fort Bragg
North Carolina, U. S. Army.''

It is the contention of the appellee, who is attacking the validity of this instrument as a will, that it is not testamentary in nature, but, if wrong in this con-

tention, that it is void for uncertainty. A will is an instrument by which a person makes disposition of his property to take effect after his death. It must be ambulatory in its, nature and. revocable at the will of the maker. Morrison v. Bartlett, 148 Ky. 833, 147 S. W. 761, 41 L. R. A. (N. S.) 39; Wells v. Lewis, 190 Ky. 626, 228 S. W. 3. Whether or not an instrument is testamentary in character depends upon the intention of the maker. It is the animus testandi that makes an instrument a will. Nelson v. Nelson, 235 Ky. 189, 30 S. W. (2d) 893.

The rule for determining whether or not an instrument is a will is thus stated in Little's Administrator v. Sizemore, 208 Ky. 135, 270 S. W. 729:

"Any instrument executed with the formalities of a will, no matter in what form, if intended as a will, and not to take effect until the maker's death, may be construed as testamentary and admitted to probate, provided it is revocable at any time at the pleasure of the maker. Whether the instrument is revocable or not depends on its legal effect when executed. If, then, it becomes a binding and enforceable obligation, or vests a present interest in the beneficiary, it is irrevocable, and therefore not a will. On the other hand, if no binding obligation is created, and no present interest passes, the instrument is revocable and will be deemed testamentary in character."

The paper here in question, though not drawn in language that would have been used by a trained lawyer, meets the tests prescribed by the rule announced in the foregoing cited cases. It was manifestly the intention of the decedent that the paper should take effect only after his death. It is true that he stated therein that he had turned over all property belonging to him in Breckinridge county to Charles W. Owen, but he further stated that the land was to be cultivated and returned to him whenever he called for it. Nothing vested by reason of the instrument during the life of the maker. Every provision in it was revocable at his pleasure. The paper itself bears internal evidence of having been drawn with testamentary intent. It begins with the words customarily used in the introductory clause of a will: "I, William Ashby Howard, being of sound mind," and concludes with a certificate

that it had been signed in the presence of witnesses. It was signed by two witnesses. When the paper is read as a whole, it clearly imports an intention on the part of the maker to make a disposition of his property to take effect after his death.

It is argued that, because the maker of the instrument referred to it therein as a letter, the proper inference is that he did not intend it to be of testamentary character. This does not follow. Even a letter may serve as a will where it contains testamentary language indicating that it was so intended. Wells v. Lewis, supra; Milam v. Stanley, 111 S. W. 296, 33 Ky. Law Rep. 783, 17 L. R. A. (N. S.) 1126. A partial list of cases from other jurisdictions in which it was held that letters testamentary in character and where the writer had the animus testandi should be probated as wills will be found in the note to Estate of Kelleher, 54 A. L. R. 913, 926.

It is also argued that no words of gift were used in the paper and that this shows that it was not the intention of the maker to have the instrument operate as a will. The paper, after referring to a division of the land at the writer's death, contains this language:

"Miss Lucile Isabel Moore, Fisher, Kentucky, my cousin, to have one half after all debts are paid; Mr. Chas. W. Owen, my uncle, to have one half the same as Miss Moore."

These are words of gift as direct and certain as if the writer had said:

"After all debts are paid, I give one half of said property to my cousin, Miss Lucile Isabel Moore and one half to my uncle, Chas. W. Owen."

No particular form of expression is necessary to create a legacy or devise. It must appear only that the maker of the instrument intended by it to dispose of property after his death. Wilson v. Wilson, 188 Ky. 53, 221 S. W. 874, 10 A. L. R. 780.

It is finally argued that, even if the instrument had been executed animo testandi, it is void for uncertainty. We have no difficulty in ascertaining the intention of the decedent. When the instrument is read as a whole, its central purpose is to give to his cousin, Miss Moore, and his uncle, Charles W. Owen, all of his land share

and share alike, after the payment of debts. The reference to Chas. W. Owen as his "soul beneficiary" does not introduce an element of uncertainty as to the identity of the devisees, who in the same sentence are clearly stated to be his cousin, Lucile Isabel Moore, and his uncle, Chas. W. Owen. Whether or not, as argued by the appellee, the writer in his crude way was attempting, by the use of the term "soul beneficiary," to select the person he desired to administer his estate is immaterial, since we are convinced that, when the instrument is read as a whole, it clearly names Miss Moore and Chas. W. Owen as the devisees.

Being of the opinion that the circuit court erred in setting aside the order of the county court admitting the paper in question to probate, the judgment is reversed with directions to enter a judgment in accordance with this opinion.