## Day's Administrator et al. v. Bright et al.

(Decided Jan. 18, 1935.)

W. B. WHITE and CHAS. D. GRUBBS for appellants.

ROSE & STAMPER for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Judge B. F. Day of Montgomery county died testate in July of 1929. At the time of his death he owned approximately 100 acres of land and some personal property, all of which latter was consumed in settlement of his estate, leaving the realty which was then subject to an unpaid mortgage debt of $1,200 due to an insurance company. By his will he devised one-half the realty to his wife, Victoria S. Day, and one one-fourth to each of his granddaughters Sylvia Welch and Jane Bright. Mrs. Day was his second wife, and of this marriage no children were born.

Mrs. Day died testate on December 12, 1931, and the construction of her will is the subject of controversy on this appeal. The will (verbatim) is as follows:

"Mt. Sterling, Ky.

"January 16, 1931.

"First: I want my deceased, husband B. F. Day will to be carried out if it has not already been settled and a tomb stone erected as he devised in his will. I want all of my debts paid and funeral expenses and small markers put to my grave. I leave to the Odd Fellows Lodge One Thousand dollars to be carefully invested and the interest to be used in keeping up the B. F. Day lot and the Mrs. Maggie Williams lot where my brother W. R.

Cassidy is buried, to keep stones cleaned and in repair and guards erected to protect graves on lot. Then I want my estate equally divided between Sylvia E. Welch, whom I raised. and my nieces Ida Hamblen, Louise Hurst, Alvis Wilson, Guthre Haywood and Mollie Eagle.

"Unless otherwise specified later in this my will Alvis Wilson is to have my cluster diamond and emerald ring. Sylvia is to have all the pictures she wants.

"Mrs. Victoria S. Day."

The Mt. Sterling Bank was appointed administrator with the will annexed, and in seasonable time instituted suit seeking to have settled the estate of Victoria Day, the discharge of the mortgage debt, and the distribution of any remaining proceeds after carrying out certain provisions of Judge Day's will, and for a construction of Mrs. Day's will.

As indicated above, Sylvia Welch was the granddaughter of Judge Day. The other five persons named in Mrs. Day's will were her nieces and nephews, children of a sister. The appellant in interest here is Sylvia Welch, and it is her contention that it was the evident intention of testatrix to devise to her one-half the real estate owned by Mrs. Day at her death, and to the other five named persons a one-half interest to be shared by them in equal portions. It is vigorously argued that by the use of the word "between" just before the name of Sylvia Welch, the use of the period after the words "whom I raised," and the use of the word "and" after the word "raised," and the further fact that Sylvia Welch was a granddaughter of Judge Day and looked upon as the daughter of testatrix, show that Mrs. Day fully intended to devise to Sylvia a one-half interest in the lands.

On the other hand, the nieces and nephews say that the word "between" should be read as meaning "among"; that the period should be a comma, and whether this be true or not the specific bequest to Sylvia Welch of "all the pictures she wants," and to Alvis Wilson of the cluster ring, is indicative of all preferences evidenced by the will. It is further suggested that the fact that Sylvia Welch was not a blood relation of the testatrix, but was reared by testatrix manifested the intention to place Sylvia on an equal footing with Mrs. Day's blood relations.

The court below adjudged that the devise was by head and not by class, thus giving to each devisee named a one-sixth interest in the proceeds from sale of the devised lands.

The court has little difficulty, upon reading the will, in concluding that Mrs. Day intended that there should be an equal distribution of her estate among the devisees named, except in so far as she gave preference to Alvis Wilson and Sylvia Welch in the final clause of the will. It must not be overlooked that the property was Mrs. Day's, though it had been inherited from Judge Day, who was Sylvia's grandfather, and it must also be borne in mind that Judge Day in his will had given Sylvia a one-fourth interest in his real estate, a fact which Mrs. Day no doubt considered. Application of several so-called cardinal rules seems to justify the court's holding. In Hon v. Connelly, 253 Ky. 181, 69 S. W. (2d) 23, 25, the following rule is announced:

"The fundamental rule for the construction of a will is to ascertain the intention of the testator and in arriving at that intention the courts should look to the language employed. If in so doing his intention can be ascertained, that intention controls, regardless of collateral and subsidiary rules which may be employed in arriving at the intention when it is obscure." (Citing cases.)

Another well grounded rule is that "the court will favor that construction which produces equality rather than inequality, except where unequal division is clearly called for." Thompson on Construction of Wills, sec., 215, p. 355. In Blessing v. Johnston, 249 Ky. 777, 61 S. W. (2d) 635, the court held that where testamentary language has a fixed meaning, the court must carry out the intention thereby expressed. So the question arises whether the phrase "equally divided" has a more substantially fixed meaning than the word "between" as used in connection with the phrase quoted.

With these principles of construction in mind, the court could not lend any considerable emphasis to a mistake in choosing, perhaps, a less legally correct word; to an error in punctuation; nor yet to the use of the word "and" in the place where it is used, nor the beginning of that word with a lowercase letter rather than a capital, because to do so would lend controlling dignity to the errors pointed out.

It will thus far be seen that the court is to give notice to the entire clause "equally divided between," but with the emphasis on the words "equally divided," and thereby follow a long and almost unbroken line of decisions. The rule has come down to us from English courts, where long ago the principle was adopted, and has since been followed, to the effect that where the words "equally divided" appear in wills, there must follow a division per capita and not per stirpes unless a strong reason to do otherwise is shown. This rule was held to prevail where the single word "divided" was used, whether the devisees be children and grandchildren, brothers, nephews, and nieces, or strangers in blood to the testator. Butler v. Stratton, 3 C. C. 367; Lincoln v. Pelham, 10 Ves. Jr. 176; Lugar v. Harman, 1 Cox Ch. 250. There is no lack of decisions in our own courts in which the general rule is held to prevail, the exceptions being few, and wherever appearing, the major rule was not followed because the exception was made clear in the particular case. The basis for the exception is expressed in Johnston v. Knight, 117 N. C. 122, 23 S. E. 92, as follows:

> "The words 'equally divided' do not absolutely control in all instances, but yield only when other language of the will, or the manifest intent, require it."

As illustrative of the general rule, and at the same time bringing it into a more specific application, reference may be had to cases wherein words identical with those used in Mrs. Day's will were employed, and where the conclusion was always favorable to the equality or per capita division rule, permitting the rule of intent as evidenced by those words, or words of similar import, to overbalance the ordinary use of the word "between" or like words. Some of these exemplary cases are: Kling v. Schnellbecker, 107 Iowa, 636, 78 N. W. 673; Farmer v. Kimball, 46 N. H. 435, 88 Am. Dec. 219, and in one case, Rogers v. Morrell, 82 S. C. 402, 64 S. E. 143, 129 Am. St. Rep. 899, where the word "and" was used in conjunction with the words "equally divided," the argument as to its use being similar to the contention here, the court adhered to the equality rule. See, also, Edwards v. Kelly, 83 Miss. 144, 35 So. 418; In re Mays' Estate, 197 Mo. App. 555, 196 S. W. 1039. In Brittain v. Carson, 46 Md. 186, it was said:

"The words of the will are, 'shall be equally divided between my said daughter * * * and the children of Virginia Carson.' A long series of uniform decisions has given a settled construction to provisions in a will similar to this, all holding that the legatees, by force of the language used, take equally, and that the distribution is to be per capita."

See, also, Perdue v. Starkey's Heirs, 117 Va. 806, 86 S. E. 158, Ann. Cas. 1916C, 409, wherein with similar language appearing and where the beneficiaries bore different degrees of relationship to each other and to the testator the court adhered to the rule herein followed. Almand v. Whitaker, 113 Ga. 889, 39 S. E. 395; Seabury v. Brewer, 53 Barb. (N. Y.) 662; Hardy v. Roach, 190 Mass. 223, 76 N. E. 720. Counsel argues that there is in this case no place for the word "among" because the division is to be made between two classes only, the granddaughter of Judge Day on the one side and the nieces and nephews of Mrs. Day, admittedly one class, on the other, and for which position there may be found some authority, but so rare as to put the cases into what may be termed an isolated class. In Kling v. Schnellbecker, supra, the same contention was made, and the court said:

"Much is made in the argument of the word 'between,' and it may be conceded that, strictly speaking, it implies a division between two parties or classes; but the reference may be to more than two parties."

If the restriction should be applied in this case, it would, of course, destroy the idea of equality or the apparent intent of causing the remainder estate of the testatrix to be "equally divided."

This rule of equality in distribution, in cases where the contrary intent is not made clear, is not foreign to the courts of this state. It has had sanction in Wells v. Newton, 4 Bush, 158; Purnell v. Culbertson, 12 Bush, 369, in which latter case Lachland's Heirs v. Downing, 11 B. Mon. 32, is distinguished, and in other cases following them.

There is a recent Kentucky case which seems to us to bear considerably upon the controversy here presented, and that is Young et al. v. White, 216 Ky. 173, 287 S. W. 565, wherein the facts showed that the will

of Albert Stutz, after devising his property to his wife for life, provided, "and at her death to be sold and the proceeds to be equally divided between her children and the children of my brother, John Stutz." The testator left no children, and the contest was between the children of Mrs. Stutz by a former marriage and the five living children of the brother John. The lower court held that under the language of the will the remainder interest was to be divided into two parts, the children of the widow taking one-half and the children of John Stutz one-half. This court cited the cases of Purnell v. Culbertson, supra; Armstrong v. Crutchfield, 150 Ky. 641, 150 S. W. 835; Bethel v. Major, 68 S. W. 631, 24 Ky. Law Rep. 398; Rogers v. Burress, 199 Ky. 766, 251 S. W. 980, and other cases, and reversed the lower court, holding that the distribution was per capita rather than per stirpes, reaching this conclusion by following the rule applied where the words "equally divided" were employed. After referring to the cited cases, the court in Young v. White, supra, said briefly:

"Other cases are cited in these opinions, and the general rule deducible therefrom is that: 'Where the subject of a testamentary disposition is directed to be "equally divided," or to be divided "share and share alike," or where similar words are used which indicate an equal division between or among two or more persons, the persons between or among whom the division is to be made take per capita, unless a contrary intention is discoverable from the will'."

The pronouncement in the foregoing case seems to be conclusive of the question here presented. The testatrix employed words clearly indicating her undoubted intention to effect an equal distribution of her property to all the persons named, and the burden rests on those contending otherwise to point to something in the will modifying such clearly expressed intention, of more persuasive force than faulty punctuation or perhaps inappropriate choice or use of certain words that the testatrix employed, but which they have failed to do in this case. We find no reason why the judgment of the lower court should be disturbed, and it is affirmed.