## Shackelford et al. v. Kauffman et al.

(Decided Feb. 18, 1936)

PAT RANKIN for appellants.

LEWIS L. WALKER and J. E. ROBINSON for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Minnie B. Robinson died testate a citizen and resident of Lincoln county, Ky., and her will was duly probated.

After disposing of a certain portion of her estate by her will, the concluding paragraph reads:

"The remainder of the nine tenth (9/10) of my estate go to the following parties. One-half (½) of this sum I bequeath to my sister, Mary Alice Lusk, and the other half (½) to the heirs of my deceased brother, H. Clay Kauffman, namely, H. Clay Kauffman, Mary F. Kauffman, and the children of my deceased niece, Louise Shackelford, in equal parts—Should any of the Kauffman heirs, namely, H. Clay Kauffman, Mary F. Kauffman and the children of my deceased niece, Louise Shackelford, die before me the share allotted shall be divided among the survivor or survivors in equal proportion. Should any of the Lusk heirs, namely, Samuel F. Lusk and Mary H. L. Freeman die before me the share allotted shall be divided revert to the survivor. * * *"

H. Clay Kauffman, Sr., died many years before the execution of the will of the testatrix and left surviving him three children, H. Clay Kauffman, Jr., Mary F. Kauffman, and Louise Kauffman Shackelford, as his only heirs at law; and, thereafter and before the execution of the will, Louise Shackelford died leaving surviving her two children, H. Clay Shackelford and Mary Shackelford, appellants herein, referred to in the will as "the children of my deceased niece, Louise Shackelford." At the time of the execution of the will and the probation thereof, H. Clay Kauffman, Jr., Mary F. Kauffman (children of the deceased brother of the testatrix), and H. Clay Shackelford and Mary Shackelford (children of Louise Shackelford), were the only heirs at law of the deceased brother of the testatrix referred to in the will.

Mary Alice Lusk predeceased the testatrix, leaving surviving her a son and daughter, Samuel L. Lusk and Mary Lusk Freeman, as her only heirs at law, who took the share of the estate willed to their mother, Mary Alice Lusk; and about this there is no controversy.

The question here to be determined is whether the

children of Louise Shackelford each share equally with the surviving children of H. Clay Kauffman, Sr., in the estate devised to his "heirs," or whether they take as a class and share one-third of the legacy jointly, or one-sixth each, constituting a per stirpes distribution. The solution of this question depends on the application or construction of the phrase "in equal parts" at the end of the sentence, "and the other one-half to the heirs of my deceased brother, H. Clay Kauffman, namely, H. Clay Kauffman (Jr.), Mary F. Kauffman, *and the children of my deceased niece, Louise Shackelford in equal parts."* (Our italics.)

The chancellor found and adjudged that the words "in equal parts" meant that the children of the deceased niece should receive one-third of the legacy in equal parts as between themselves, or a one-sixth part each, and the surviving children of H. Clay Kauffman, Sr., would share one-third each of the legacy; and to reverse that judgment H. Clay Shackelford and Mary Shackelford have prosecuted this appeal.

It is the contention of the appellants that the words "in equal parts" refer to all the heirs of H. Clay Kauffman, deceased, including the appellants, and they should share equally with the surviving children of H. Clay Kauffman, Sr.; that is, the legacy should be divided equally one-fourth each among the four legatees.

It will also be noticed that the clause of the will here in question further provides that should H. Clay Kauffman, Jr., and Mary F. Kauffman, or the children of Louise Shackelford, predecease the testatrix, the share allotted to such one or ones as may predecease her shall be divided among the survivor or survivors "in equal proportion." It is insisted that the words "in equal proportion" further indicate a per capita distributon of the estate devised. The will as a whole, considered in connection with the relation of the parties and the circumstances, very clearly indicates that the words "in equal proportion" were used in the same sense as the words "in equal parts" in the preceding sentence of the will, that is, the survivors would take in proportion to their blood or relation to their ancestors and, therefore, the heirs of the deceased niece take collectively an equal proportion with the surviving chil--

dren of H. Clay Kauffman, Sr. There is also the further provision in the clause of the will above quoted, that should any of the Lusk heirs predecease the testatrix, the share allotted to such one as may predecease her shall revert to the survivor. These latter two provisions of the will indicate that an equal distribution of the estate as between the blood and representatives of her deceased brother and her sister was intended, and to effectuate such distribution necessarily require that it be divided per stirpes. A per capita distribution would result in the blood of the testatrix' deceased brother's daughter (Louise Shackelford) receiving more than either the son or daughter of H. Clay Kauffman, Sr.

It is a cardinal rule of construction of wills that no isolated part will be seized upon to determine the intention of the testator without regard to other parts of the will or the instrument as a whole viewed in the light of the circumstances and the relation of the parties.

In Prather et al. v. Watson's Ex'r et al., 187 Ky. 709, 220 S. W. 532, it is pointed out that where the subject of a testamentary distribution is directed to be "equally divided" or to be divided "share and share alike," or where similar words are used which indicate an equal division between or among two or more persons, a per capita distribution will be made of the property, "unless a contrary intention is discoverable from the language used in the will." In that case the testator directed his farm to be sold "and the proceeds to be equally divided between E. C. Watson and Sheffie Bridges, and my two grandchildren, Sheffie Watson and Shafter Watson, Walter's heirs." E. C. Watson and Sheffie Bridges were children of the testator, and another son, Walter Watson, was dead at the time of the execution of the will, leaving the two named children as his only heirs. It was held that the two grandchildren took jointly one-third of the property as representatives of their deceased father; and, in the absence of a contrary intention appearing, the testator used the words "heirs" or "heirs of the body" in their primary, legal, or technical sense. This case was referred to in the case of Fischer v. Lange, 190 Ky. 699, 228 S. W. 684, 685, 687, in which latter case the language used by the testator was substantially the same

as in the Watson Case, supra, and the present case, except the word "heirs" was not used. In distinguishing the Watson Case from the Fischer Case, it was pointed out that the conclusion reached in the Watson Case "was bottomed almost entirely upon the use of the words 'Walter's heirs' in that paragraph of the will, and that this fact, with the additional one of conjoining the three devisees or classes with the conjunction 'and,' indicated an intention on the part of the testator to divide his property among three classes: One to his son E. C. Watson; another to his daughter Sheffie Bridges; and another to the two named children of his deceased son Walter, * * * and that their combined share should be limited to whatever Walter would get had he been living." In the will under consideration the testatrix devised one-half of the property to her sister and the other one-half to the *heirs* of her deceased brother, H. Clay Kauffman, Sr. We are unable to see any distinction between that case and the case at bar.

In Lachland's Heirs v. Downing's Ex's, 11 B. Mon. ( 50 Ky.) 32, the will contained the following clause:

"All the residue of my estate whether real, personal or mixed, not herein otherwise disposed of, I desire may be equally divided after my death between by brother John Downing, my two sisters Elizabeth Cameron and Nancy Gibson and the children of sister Nelly Lachland, to them and their children forever, it being my desire that the portions allotted to my brother John and my two sisters and the children of my deceased sister Nelly Lachland shall be made as nearly equal as possible, both in kind and in amount."

After disposing of another question which has no relation to the present case, the court stated the queston thus:

"And, 2, does the previous devise entitle the children of the deceased sister Nelly Lachland to have each an equal portion with the living brothers and sisters, or does it entitle them to such portions collectively?"

The court disposed of that question in the following language:

"As to the second question, we think there is scarcely more room to doubt the testator's intention, although upon the words of the clause it may not be susceptible of such full and satisfactory proof. But where the testator show such solicitude to effectuate that justice which consists in equality of distribution among those who were equally the objects of his bounty and affection, we should deem it proper, and indeed necessary, in the absence of any peculiar fact or expression of a contrary tendency, to presume the testator's feelings and benevolence flowed in the usual channels, and to construe all ambiguous expressions in conformity with this presumption. Then, as no reason appears why the testator who is so particular in desiring equality between his living brothers and sisters, should place the children of a deceased sister each upon an equality with the living brethren, we should expect and require some clear and unequivocal indication of such intention in order to establish its existence. The phrase 'the children of my deceased sister,' etc., denotes a class, and although it indicates that each individual of that class stands equally in the favor of the testator, it does not in itself import that each of them stands equal with others of a different class who are nearer to the testator, and just as near as the ancestor of the children would herself have been if living. On the contrary when these children are referred to as a class or collective body without any expression to denote individually, and when there is no other class or individual referred to, that stands in the same relation to the testator, the natural inference seems to be that they were to take as a class or collective body the equal portion or interest given to them under that description, and that they were not to take individually a portion equal to that of the other individuals between whom and them by their collective name the division is to be made. And as it would have been so easy to indicate this individual equality if it had been ntended, by inserting the words 'each of' before children, the failure to do this in either of the clauses directing an equal division, is, in our opinion, conclusive when added to the other considerations adverted to, that such was not the testator's

intention. This construction is further authorized by the construction given to similar words in the case of Luke v. Marshall, 5 J. J. Marsh. 353. We are of the opinion therefore that the will gives to the children of Nelly Lachland collectively and not individually an equal portion, that is, one fourth part of the residue."

Appellants rely upon certain cases to sustain their contention that the testatrix intended a per capita distribution of the estate, namely, Armstrong et al. v. Crutchfield's Ex'rs et al., 150 Ky. 641, 150 S. W. 835; Day's Adm'r v. Bright, 257 Ky. 359, 78 S. W. (2d) 43; Conn v. Hardin, 215 Ky. 307, 284 S. W. 1077; and perhaps other like cases where the language used by the testator was like or similar to the language used in the present case, except the word "heirs" does not appear in any of those cases.

It may be conceded, however, that there are border line cases on the question under consideration, but the great preponderance of authority seems to be to the effect that where the word "heirs" is used by the testator the devisees take per stirpes; that is, the share their ancestor would have taken if he had been living. And furthermore, as was said in Lachland's Heirs v. Downing's Ex'rs, supra, the phrase "the children of my deceased sister," etc., denotes a class, but it does not in itself import that each of them stands equal with others of a different class who are nearer to the testator. However, the word "heirs" does not appear in that case and the court's conclusion seems to be bottomed upon the collective noun "children" and the relation of the testator to the devisees. It is also the rule that the law favors equality in distribution, and all ambiguity will be determined in favor of such distribution, unless a contrary intention clearly appears. The justice and reason of this rule is fully set out in the Lachland Case, supra, and a reference to that case is sufficient without further elaboration on the rule.

For reasons indicated we are constrained to the conclusion that the principle enunciated in the Lachland Case, and other like cases, is a sound and equitable one, and should be followed in the present case.

The judgment is affirmed.