## Underwood et al. v. Underwood et al.

(Decided May 10, 1938.)

JAMES C. CLAY and JOHN W. McGILL for appellants.

COUNTS & COUNTS for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

James Underwood, a resident of Carter county, died June 16, 1936, leaving an estate worth approximately $2,600, of which $1,300 was personal property, principally cash, which was found concealed in various places in his house. He left 135 acres of land worth about $1,300. His heirs at law were one brother, W. O. Underwood, two sisters, Kate Underwood and Louisa Abbott, and several nephews and nieces, the sons and daughters of two deceased brothers, Rex and Allen Underwood. After W. O. Underwood had qualified as administrator of his brother's estate, a paper written wholly in the handwriting of the deceased was produced in the county court and probated as his last will and testament, and the proper construction of this instrument is the bone of contention in this lawsuit. It reads:

"April, 8, 1924

"Iff something should hapen me or I should die search every crack and crevis in my trunk and what money I have got and what I own I want you all to put a monument to my grave one to Walters one to Franks one to Mas one to pas put something that is good say cost eighty or one hundred dollars each pay all of my debts and iff there is anything left you all can fix it up between yourselves Will Lou and Kate see that this is done as I want it

"James Underwood"

It will be noted that not a single punctuation mark appears in the entire instrument except in the date line. W. O. Underwood, as administrator of his deceased brother's estate, carried out the provisions of the will in regard to the purchase of monuments and the payment of debts. About $600 in money was left, and, on the theory that the will gave to him and his two sisters the remainder of the estate, he divided the money equally between himself and his sisters, Kate and Lou. Will and his two sisters divided the land among themselves, and made deeds to each other accordingly. The children of the two deceased brothers, Rex Underwood and Allen Underwood, appealed to the Carter circuit court from the probate of the will, and, by amended pleadings, asked for a construction of the will, in the event the paper was declared to be a will, and for a declaration of the rights of the parties. Hon. J. B. Hannah tried the case as special judge, and, in the course of a written opinion which is a part of the record, he said:

"Plaintiffs contend that said paper does not meet the legal requirements of a will, but that if construed to be a will, the only effective part of same is that relative to paying the debts and for the five monuments.

"The defendants contend that it is a will, and devises to them the residue of the estate—realty and personalty—and that the plaintiffs are excluded from any interest in the estate.

"There is no denial that the paper in question is wholly in the handwriting of the deceased, and, if a will at all, it is a holographic one.

"The crudeness of the paper makes it diffi-

cult to determine whether it was intended to be a will, and if a will, whether it specifically disposes of the whole of the estate.

"Deceased was of a family of eight children; Will O. Underwood, Kate Underwood, and Louisa Abbott, still living, and are the defendants herein; and Rex, Allen, Walter and Frank, who, together with the father and mother, died prior to April 8, 1924; and in passing it probably should be mentioned that monuments had been placed at the graves of Rex and Allen prior to said date.

"James was exceedingly frugal and parsimonious. As evidence of this, in addition to the three writings mentioned, his sister swears that he was 'on relief' for some time before his death.

"From the reading of these several writings, it would seem that his principal if not only concern was that his fortune should be found after death; and if he intended the writing in question to be a will, this principal concern doubtless so occupied his mind that he refused to trouble himself at any time to make plain the way the 'part that was left' was to be distributed, if he had a preference, though he lived more than twelve years after the date of said writing.

"The rule is that a will is any instrument by which a person makes a disposition of his property, to take effect after his death, and which is revokable during his life.

"This paper is very crude, but he made plain that he wanted certain things done after his death, and paid for out of his estate. He made plain that he wanted his debts paid and monuments to his grave, and the graves of his father, his mother, and his two dead brothers. But this is all he made plain.

"Another rule is that a will cannot be construed by conjecture as to the intentions of the testator. And another is that the law will not suffer the heir to be disinherited upon conjecture, and, as said in Shackelford v Kauffman, 263 Ky. 676, 93 S. W. (2d) 15, the law favors equal distribution, and all ambiguity will be determined in favor of such distribution, unless a contrary intention clearly appears.

"This instrument is certainly ambiguous, and if the testator had an intention to devise 'what was left' to any particular person, or group of persons, it does not clearly appear in said writing.

"There is no evidence in the record from which a reasonable deduction can be drawn charging deceased with settled aversion toward any relative; in fact, the instrument itself shows that he highly esteemed two of his dead brothers, by directing monuments to be placed at their graves; and the reason that he failed to mention the other two doubtless was because monuments were already at their graves. So instead of charging him with a desire to disinherit any of his heirs, it is easier to conjecture that he desired to avoid showing any partiality between them.

"I am therefore of the opinion that the paper in question should be held to be the will of James Underwood, deceased, as to that part that relates to the payment of debts, and for the five monuments; but to be too vague and indefinite to be construed to dispose of any of the residue of decedent's estate, and that said residue, both real and personal, should be distributed as provided by Statute."

The instrument is undoubtedly testamentary in nature, and was properly probated. Dixon v. Dameron's Adm'r, 256 Ky. 722, 77 S. W. (2d) 6; Howard's Ex'r v. Dempster, 246 Ky. 153, 54 S. W. (2d) 660. This is practically conceded by the appellees. We think the chancellor correctly adjudged that it is void for uncertainty except as to the provisions for the purchase of five monuments and the payment of debts. The appellants argue that if a period is placed after the word "Kate," the intention of the testator is clear; that is, that he wanted his brother and two sisters to have the remainder of his estate after purchasing the five monuments and paying his debts. If punctuated as suggested by appellants, the concluding part of the will would read:

"If there is anything left you all can fix it up between yourselves, Will, Lou, and Kate. See that this is done as I want it." Even if the writing is punctuated in this manner, it is not entirely clear that the testator intended to give the remainder of his estate to the three

named persons and thus disinherit his other heirs. He merely said: "You all can fix it up between yourselves." He was particularly interested in the purchase of the monuments and the payment of his debts, and, as stated by the chancellor, the provisions of the will relative to these matters are plain. The appellees, on the other hand, argue with equal force that a period should be placed after the word "yourselves." If this is done, the last sentence of the will merely names Will, Lou, and Kate executors. The testator may have intended that his brother and two sisters should receive the remainder of his estate, but he did not say so in unambiguous terms.

A fundamental rule universally applied in the construction of a will is the one that the intention of a testator, as gathered from the four corners of the will, is the one to be adopted and enforced by the court, but, in applying that rule, the language that the testator used, and not the language he might have used, controls. Another rule universally approved is that a con struction leading to an equality of distribution as be-tween the natural objects of the testator's bounty will be preferred and all ambiguity will be determined in favor of such equality unless a contrary intention clearly appears. In Biggs v. Fidelity & Columbia Trust Co., 273 Ky. 54, 115 S. W. (2d) 298, decided March 25, 1938, after referring to the rule that the intention of the testator, as gathered from the four corners of his will, is the one to be adopted, the court said (page 300):

> "All other rules are subsidiary to that one, and have only assisting effect in accomplishing that supreme purpose; or in reaching that conclusion, i. e., What was the intention of the testator as gathered from all the language he employed throughout his will. Among them, and perhaps the most forceful one standing next to the frontal one (of ascertaining and administering the intention of the testator), is the one that courts favor and will administer equality among descendant beneficiaries of a will, unless its language clearly indicates to the contrary; and which is to say, that where the language of the testator is ambiguous and uncertain, calling for two possible interpretations—the one resulting in equality and the other resulting in inequality—the former will be adopted

to the exclusion of the latter. 69 C. J. 102, sec. 1151; Cornwall v. Hill, 135 Ky. 641, 117 S. W. 311; Brierly's Ex'r v. Nelson, 228 Ky. 116, 14 S. W. (2d) 201; Bourne v. Johns, 233 Ky. 448, 26 S. W. (2d) 13; Shackelford v. Kauffman, 263 Ky. 676, 93 S. W. (2d) 15, and cases and authorities cited in those opinions. The text in Corpus Juris, in stating the rule (supported by many cases cited in the notes) says: 'It will not be presumed that the testator intended to discriminate between the natural objects of his bounty, and a construction effecting equality between the natural objects of the testator's bounty will be favored.' "

It cannot be denied that the will in question is ambiguous in all respects except as to the directions concerning the purchase of monuments and the payment of debts. That being true, the rule that a construction effecting equality between the natural objects of the testator's bounty will be favored must be applied.

The judgment is affirmed.