Case 28.

PET. EQ.

## Clarke, &c. vs. Clarke.

### APPEAL FROM MADISON CIRCUIT.

1. Estates of persons dying intestate, since the passage of the Revised Statutes, must be distributed according to its provisions.
2. A sum of money remitted to a son, which was part of the price of a tract of land purchased by the son of the father before the passage of the Revised Statutes, should be charged to the son as part of the distributive share of his father's estate, who died after the passage of the Revised Statutes.
3. The mere oral declaration of a parent of his intention cannot make that an advancement, which is not such by law, or exempt a child from liability to account for money or property which he has given him, with which the statute makes him chargeable. This can only, be done by will duly executed, disposing of the whole of his estate, real and personal.

[The facts of the case appear in the opinion of the court.—REP.]

*S. Turner* for appellants—

The only question in this case is, whether James Clarke should be charged in the distribution with that which the circuit court refused to charge him. Other questions of detail will be adverted to hereafter.

It is alledged that James Clarke received seventy acres of land, worth $2,100. more than what the intestate had advanced to his other children, and prays that it may be accounted for in the distribution. James Clarke answers and says he paid his father for the seventy acres of land. It is proved

that David Clarke, the father of James Clarke, said he had given his son James $500 of the price of the land, and surrendered his notes to that amount. It is also proved that James Clarke said his father had given him the land. It is also proved that James Clarke had the use of a negro man for the year 1849. worth $80 to $100, and that he had the use of fifty acres of land for six years, worth $50 per year.

We contend that James Clarke should be charged with the $500—at least $80 for the hire, and $300 for the use of the fifty acres of land—and that he had no right to make improvements on the land, and charge the same against the use of the land without authority

It is admitted that the hire of the slave, and the rent of the land, is not claimed in the petition specially, but it is one of the subjects proper for a general distribution, which is the object of the petition.

It is said that it was not the intention of David Clarke, the father, that James Clarke should be charged with the $500, and that his verbal declaration to that effect is to be respected in the distribution. This is denied. No such verbal declarations are to control the statute of distributions, which intends equality in the distribution of estates. Moreover such a principle would open the door to great frauds, which the legislature intended to guard against by requiring written wills.

It is supposed that this question is to be decided under the act of 1797. (28*th section*, *Stat. Law*, 661,) as that statute was in force when the advancements were made, though the intestate died since the passage of the Revised Statutes, as the latter was not intended to affect any accrued or accruing rights. The 17*th section of the act of* 1796, cited in the case of *Barbour vs. Taylor*, 9 *Dana*, 85, is in substance the same as that above cited. These acts provide that when the children of the intestate, or their issue, shall have received from the intestate in his lifetime any of his personal estate, by way of advancement,

and shall choose to come into the distribution with the other persons entitled, such advancements shall be brought into hotchpot with the distributable surplus. In the case last cited, the court said that the objects and intentions of the father who gave the property are to govern their decision, mislead the circuit court in this case. The question in that case was not like this case. The question then was whether Mrs. Barbour's children, the daughter of the intestate should be charged with the value of a tract of land which Barbour and wife were put in possession of, and which was conveyed to Barbour after his wife's death, with a statement in the deed, that it was to be understood he conveyed the land as a part of the *portion* he had given to Barbour with his, the intestates daughter.

The objection was that it had been conveyed to Barbour after the death of the wife, and therefore the children objected to being charged with it; but it appeared that the land was verbally given in the lifetime of the daughter, and conveyed after her death, with the declaration above referred to on the face of the deed. It was treated as an advancement.

In this case the $500 was given directly to the son, who now refuses to account for it as an advancement, because his father verbally declared that he intended to give him that amount more than his other children, and yet claims an equal share in the distribution. It is not supposed that the law will sustain his claim. It will be a vertual repeal of the statute. The case of *Hook vs. Hook*, 13 *B. Monroe*, 526, is regarded as settling the question. The case of *Powell vs. Powell*, 5 *Dana*, 168, is also relied on.

It may be insisted that the 17*th section of Revised Statutes, page* 282, has a bearing on this question. We suppose it has not, but the former statute must govern; but if the court should think otherwise, we insist that this section of Revised Statutes has no ap-

plication to the $500, hire of the negro, or rent of the land.

The circuit court should have had an account from those who have been managing the estate, and settled all such matters through a commissioner before dismissing the parties.

*W. H. Caperton* on the same side—

The main question in the settlement of this estate is whether the defendant, James Clarke, should be charged with $500 given to him by his father in his lifetime more than he gave to his other children.

The proof in regard to this gift will be found in the depositions of Robert Clarke and Thomas Boyce.

It is evident that if it was the intention of David Clarke to give his son James $500 more than his other children, it was effected in willing him the fifty acres of land that much cheaper than its value at the time.

That he gave up to him notes which he held on him for the land, to the amount of $500, is evident from the deposition of Robert Clarke.

It is also manifest that this gift was upon condition that James should, in future, abstain from drink; and it is equally manifest that this gift had no beneficial influence on his habits in that regard. He is afterwards intoxicated, as proved by R. Clarke, and of this unchanged habit his father was apprised and complained.

David Clarke told Thomas Boyce that he had given James $500 of the money he was to have paid for the land. In speaking of this gift it was unaccompanied with any explanation.

From this view of the case, and I think it the correct one, James Clarke, in the settlement of his father's estate, and which is a small one, has got $1,000 more than his brothers and sisters.

The master, to whom the case was referred, charged James with an advancement of $500. This the

CLARKE, &c.
vs.
CLARKE.

court below disallowed. From that judgment we appeal, and with confidence ask a reversal.

*C. F. Burnham* for appellee—

This suit is for the distribution of the estate of David Clarke, deceased. It was referred to a commissioner to state the accounts between the distributees, in doing which, he charged James Clarke, one of the distributees, with the sum of $500, which, on the hearing. the circuit court struck out, and the propriety of this act of the court in disallowing this change is the principal point in contest.

1. The decree in this particular was right, and should be affirmed. Admit all that Robert Clarke says about the gift, it is not an advancement with which James Clarke should be charged. What is an advancement? The Supreme Court of Massachusetts, *Osgood vs. Breed's heirs*, 17 *Massachusetts R·port*, 358, say: "An advancement is a giving, by anticipation, the whole, or a part of which it is supposed a child will be entitled to on the death of the party making it, and it must be proved to have been intended as an advancement chargeable to the childs share of the estate, or it will be deemed an absolute gift."

What is an advancement must always depend very much upon what is the condition in life of the parties, and may be absolutely fixed by that intention at the time, if that can be ascertained. (*Youngblood vs. Norton*, 1 *Stroth. Eq.*, 122.)

The court of appeals of Kentucky, in *Barbour vs. Taylor's heirs*, 9 *Dana*, 85, quoting from *Edwards vs. Freeman*, 2 *Pr. Wms.*, 43, and *Wayland vs. Wayland*, 2 *Atkins*, 635, decide that "in determining all questions concerning advancements, the object and intention of the father are to be chiefly considered," and in the same opinion affirming the wisdom of the English authorities say, "that the controlling principle is the intestate father's intention." The case of *Hook*

*vs. Hook*, 13 *B. Monroe*, is not inconsistent with this case.

The intention of David Clarke, the father, in respect to the $500, is clearly proved by the only witness who proves the gift. He proves that the intestate declared his intention to give James Clarke that amount more than his other children, whether they liked it or not, and for the sound reason that he was the victim of epilepsy, an incurable disease, and one calculated to impair, if not destroy, his capacity to take care of, and provide for his family.

2. The rejection of the depositions of each of the plaintiffs was right, as they were taken at the instance of other plaintiffs. They were not competent to prove advancements to the defendants whom they had sued. The defendants might have been examined on oath when called on for the purpose of disclosing what they had received, (1 *Greenleaf*, 405,) and each of the plaintiffs had the same right to examine their co-plaintiffs before the master for the same purpose.

3. The admission of the deposition of Mrs. Jane Clarke, the widow, according to the case of *Maguire vs. Molony*, 1 *B Mon.*, 224, was not wrong. She stated nothing; she was not competent to prove, and if the law of that case has been, as was contended, repealed by the *Code of Practice*, sec. 670, still her deposition cuts no figure in this case, and can afford no ground for reversal.

4. The attempt to charge James Clarke with certain small sums of money is explained by the deposition of Robert Clarke. Showing that James had money deposited with his father for safe keeping. The other items are not sustained.

5. The improvements made by James Clarke on the land which he occupied more than paid for its use. Moreover the use of land by a child, by permission of the father, is not a proper charge as an advancement. In *Christian vs. Coleman's administrators*, 3 *Leigh.*, 30, it is said that "children holding

lands as tenants at will of their mother, to their own use, no rents being rendered or demanded, were not bound to account for the profits, or bring them into hotchpot as advancements, either real or personal. See also *Williams vs. Stonestreet*, 3 *Rand. Va. Rep.*, 559; *Jones vs. Jones*, *Murphy's N. C. R.*, 150.

We ask an affirmance as to James and Susan Clarke, and the case be reversed as to Benjamin and John Clarke, and that they be charged with advancement proved by Hart and Collins not charged to them.

January 23.

Judge SIMPSON delivered the opinion of the court:

David Clarke died intestate in October 1854. No administration seems to have been granted on his estate, but the widow and heirs entered into a written agreement that Robert Clarke, the brother, and Benjamin Clarke, one of the sons of the intestate, should make sale of, settle and distribute his estate without the appointment of an administrator.

A petition in equity was filed in this case by part of the heirs, setting forth the foregoing facts, and also alledging that the advancements, which the intestate had made to his children were about equal, except that he had advanced to the defendant, James Clarke, one of his sons, about seventy acres of land, worth a least twenty-one hundred dollars, which was that much more than either of his other children had received. They prayed that the advancements might be settled, and for a distribution of the proceeds of the estate, &c.

The testimony in the cause establishes the fact, that the land, in the petition mentioned, was sold by the intestate to his son James Clarke, and that after the sale, he gave to him five hundred dollars, of the purchase money, and surrendered to him his notes for the same, stating at the time, that he intended to give him that much more of his estate, than his other children were to have. And the question is,

whether under these circumstances, this sum is to be charged to James Clarke as an advancement?

As the intestate died in 1854, his estate must be distributed according to the provisions of the Revised Statutes. The law in force at the time of his death, must determine, not only the persons who are entitled to his estate, but also the manner in which it shall be divided and distributed among them. It is contended, however, that the questions relating to the advancements made by him in his lifetime, should be decided by the law in force at the time they were made, and that as the gift of the five hundred dollars to his son James was made before the Revised Statutes took effect, its character and legal effect should be determined not by the Revised Statutes, but by the pre-existing law, and to maintain this position, the third section of the act adopting the Revised Statutes is referred to, in which it is declared, that the repeal by that act of all previous statutes of a general nature shall not affect any right established, accrued or accruing, before the Revised Statutes take effect. But we do not think that any right had accrued or was accruing in consequence of any advancement that had been made by the intestate. No right to any part of his estate, existed in any form, in his children, until after his death. He had it completely in his power during his life to have made any disposition of it he pleased, and to have defeated their right to any part of it after his death. It cannot be said, therefore, with any propriety, that they had an accruing right to any part of it during his lifetime, a right must have some basis to rest upon, otherwise it can have no incipient state, or be regarded either as accrued or accruing. As they had no right to any part of the intestate's estate at the time the gift of the five hundred dollars was made by him, no right accrued to them or any of them at that time to require the character of the gift to be determined by the law then in existence, but the law in force at the time they ac-

*Marginal note:*

CLARKE, &c.
vs.
CLARKE.

1. Estates of persons dying intestate, since the passage of the Revised Statutes, must be distributed according to its provisions.

quired a right to the estate, must regulate and deter-
mine the amount of their respective interests there-
in, and in doing that must also necessarily determine
all questions in relation to the advancements which
either of them may have received in the lifetime of
the intestate.

By the 17th sec. of the Chapter on Descent and Dis-
tribution, Revised Statutes, page 281, it is provided,
"that any real or personal property or money, given
or devised by a parent, or grand-parent, to a descen-
dant, shall be charged to the descendant, or those
claiming through him, in the division and distribu-
tion of the undevised estate of the parent, or grand-
parent, and such party shall receive nothing further
therefrom, until the other descendants are made pro-
portionably equal with him, according to his descen-
dible and distributable share of the whole estate,
real and personal, devised and undevised.

"The maintaining or educating, or the giving of
money to a child or grand-child, without any view
to a portion or settlement in life, shall not be deem-
ed an advancement."

Under the operation of these provisions of the Re-
vised Statutes, all the *property*, real or personal,
which is *given* or *devised* to a descendant, by his pa-
rent, or grand-parent, must be charged to the de-
scendant, or those claiming through him in the di-
vision and distribution of the undevised estate of the
parent, or grand-parent, and that without any regard
to the character of the gift, or to the intention of the
donor at the time it was made.

The *money*, also, as well as the *property* which is
given, to a child, or grand-child, is to be charged to
him, unless it is given without any view to a por-
tion or settlement in life.

This exception evidently applies alone to money,
that is given to be expended for purposes of amuse-
ment, or health, or education, or temporary enjoy-
ment of some description, and not with a view to
its investment in property, or its appropriation in

any mode, in which it may be permanently and beneficially enjoyed.

If, therefore, the sum of five hundred dollars, which was given to James Clarke by his father, is to be regarded as that much real property, on account of its being part of the price of the land he sold him, then he is clearly chargeable with it, according to the express directions of the statute, and if it be regarded as money, it is not embraced by the foregoing exception, inasmuch as it was given, expressly with the view, to its permanent enjoyment in the use of the land on which he resided at the time, and may, with evident propriety, be said to have been given to him, with a view to a "settlement in life." He is, therefore, chargeable with it, unless the intention of his father that he should not be, which intention was clearly manifested, by his declaration at the time of the gift, that he intended to give him that much more than his other children, can be made to limit or restrict the operation of the statute.

Where the gift of money is not embraced by the exception in the statute, there is no distinction between a gift of money, and a gift of property. And as the language of the statute is plain and unambiguous there is no room for construction. The provision that the money, or property given, shall be accounted for, is imperative, and there is nothing to indicate that this requisition of the law, was to yield in any degree, to the intention with which the gift was made. The object of the statute seems to be, to produce perfect equality, in distributing the estate of a decedent, not disposed of by will, among the persons entitled thereto. This object might be, in a great degree frustrated, by allowing the intention of the giver to intervene, and have the effect of avoiding the express and imperative requisitions of the statute.

By the acts of 1797, and of 1830, (1 *Statute Law*, 783-4,) any advancements which had been made by an intestate in his lifetime to his children, were to

2. A sum of money remitted to a son, which was part of the price of a tract of land purchased by the son of the father before the passage of the Revised Statutes, should be charged to the son as part of the distributive share of his father's estate, who died after the passage of the Revised Statutes.

CLARKE, &c.
vs.
CLARKE.

be charged to such of the children as had received them, in the division and distribution of his estate. The language used in these statutes, was not that the property or money given by the intestate to a child, was chargeable against him, but that he was to be charged with the advancements which had been made him, and what constituted an advancement depended in a great degree upon the intention of the donor, and the circumstances which attended the making of the gift. (*Barber vs. Taylor's heirs*, 9 *Dana*, 85.) Still, however, the intestate could not, even by declaring it to be his intention, make that an advancement which was not legally such, or render some of his descendants liable to be charged for advancements which had never been received by them, but he could only accomplish such an object, by a will executed for that purpose. (*Mitchell vs. Mitchell*, 8 *Alabama Reports; Hook vs. Hook*, 13 *B. Mon.*, 526; *Civil vs. Rich*, 1 *Vernon*, 216.)

3. The mere oral declaration of a parent of his intention cannot make that an advancement, which is not such by law, or exempt a child from liability to account for money or property which he has given him, with which the statute makes him chargeable. This can only ly be done by will duly executed, disposing of the whole of his estate, real and personal.

Under the Revised States, however, the parent, or grand-parent, cannot, by a mere declaration of his intention, either make that an advancement which is not such by law, or exempt one of his children from liability to account, for money or property he has given to him, with which the statute makes him chargeable. This he can only effect by a last will and testament duly executed, disposing of the whole of estate, real and personal.

To permit the intestate, to give away part of his estate to one of his children, and to enable the same child to claim an equal portion of the residue of his estate with his other children, by a mere verbal declaration that such was his intention, would not only defeat the purpose of equality designed to be effected by the statute under consideration, but would be a direct violation of the spirit and meaning of the statute on wills. It would virtually enable a person by a mere verbal declaration of his wishes and intention, to dispose of a portion of his estate, of which he dies intestate, in a different manner from that in which the law

would dispose of it in the absence of such declaration, notwithstanding the law itself has pointed out the only mode in which this can be lawfully accomplished.

We are of the opinion, therefore, that James Clarke is, in the distribution of the intestate's estate, chargeable with this sum of five hundred dollars.

He is not, however, chargeable with the rents of the land belonging to his father, which he occupied before he made the purchase referred to, inasmuch as the improvements he made upon the land, were fully equal to the value of the rents, and as the land was situated in the immediate vicinity of that upon which his father resided the reasonable presumption is that they were made with his assent and approbation.

Neither is he chargeable with the hire of a negro, as an advancement. The proof does not show how long he had the services of the negro, nor whether the note of eighty dollars executed by him, and found among the intestate's papers after his death, was executed for this hire, or for something else. If the note was given for the hire, then it is a debt, and not an advancement. And, as the plaintiffs alledged in their petition, that the advancements by the intestate to his children were about equal, except as to the land he had given to his son James, and this hire was not claimed as an advancement, we think it should not be charged against him as such in the division of the estate. But the court below erred in not charging him with the five hundred dollars given to him by his father, in the price of the land he sold him

Wherefore, the judgment is reversed and cause remanded that a judgment may be rendered charging the said James Clarke with the sum of five hundred dollars in addition to the advancements with which he was charged by the court below.