## Loy v. McClister, et al.

(Decided January 31, 1911.)

### Appeal from Adair Circuit Court.

The testator devised his home place to his wife for life providing that if his afflicted son, Michel, survived his mother, he should have the land on account of his afflictions; that he wished his son, Marcus, to stay on the farm with Michel and manage it the best he could to make a living for Michel and himself, adding that if Marcus took care of his brother, Michel, at the death of Michel,.

Marcus should have everything both real and personal belonging to Michel. Michel survived his mother. Held, (1) That Michel took the land for life with remainder to Marcus if Marcus took care of Michel as provided in the will. (2) That Marcus taking care of Michel as provided in the will was a condition precedent to the vesting of the estate in him and that Marcus must show that he had done so to be entitled to the land after Michel's death.

J. F. MONTGOMERY and G. T. SMYTHE for appellant.

ROLLIN HURT and JAMES GARNETT for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

The will of William C. Loy, which was admitted to probate on July 6, 1903, is in these words:

"I give and devise to my beloved wife, Manda J. Loy, after my just debts is paid all of my personal property consisting of cash and cash notes, horses, cattle, hogs, sheep, household and kitchen furniture and farming tools. I want her to have all of the above described property for her own use and benefit so long as she lives and at her death my will is that if my son, Michel A. Loy, is living that my farm of 200 acres of land more or less, I give to him on account of his afflictions, I want my son Marcus A. Loy, to stay on the farm with Michel and work the farm and manage the best he can to make a living for Michel A. Loy and himself. I give to my son, Michel A. Loy, my watch. I want Michel at the death of his mother to have a good bed and plenty of bed clothing for the bed to keep it warm. I want my daughter, Ina Loy, and my son, Marcus Loy to have their horses, bridles and saddles and their cows that is on the farm, that I have given them to make them equal with the older brother, Jo F. Loy, and sister, Liza J. McClister. I want my daughter, Ina, to have a home with her mother and two brothers, Marcus A. Loy and Michel A. Loy as long as she remains single. I want my executors to help my wife to manage her business and keep what money she may have in safe hands, in trust for her use if she needs it. I give my son, Marcus A. Loy, my gun and at the death of my wife, if there is any of the personal property remaining on hands I want it sold and the proceeds after paying her just debts and burial to be equally divided between my five children, Liza J. McClister, Ina Loy, Marcus A. Loy, Michel A. Loy, and my two little grand-

children to have their fathers, Jo. F. Loy, equal part with my four other children. My will is, if my son, Marcus A. Loy, takes care of his brother, Michel A. Loy, that at the death of Michel, Marcus A. Loy is to have and to hold everything both real and personal that belonged to Michel A. Loy, but if Michel A. Loy should die before his mother, then I want at the death of my wife, Manda J. Loy, everything both real and personal that is left, if anything, to be sold to the highest bidder and equally divided that is after paying my wife's just debts, between my five children as above named."

Marcus A. Loy brought his suit against Liza J. McClister and her husband, alleging in his petition that previous to February 1910, the daughter, Ina, had married and the widow had died; that Michel survived his mother, and died in May 1910, and that the defendants had wrongfully entered upon the land described in the will while he was in possession, claiming it as his own, and had since forcibly kept him out of possesion. The circuit court sustained a demurrer to his petition. He then filed an amended petition in which he alleged that he was living on the farm with his father and mother at his father's death; that he continued to live on the farm after his father's death with his mother and Michel, working it as best he could and making a living for them; that Ina had a home there until she married, and that from the death of the testator to the death of Michel, he lived on the farm with Michel, took care of him, and furnished him board, lodging and the necessary attention suitable to his condition and station in life. The court sustained a demurrer to the petition as amended, and the plaintiff declining to plead further, dismissed it. He appeals.

It is insisted for the plaintiffs that by the will the farm is divised to Michel at the death of his mother, when she died before him; that he so took a fee under the will, and that the limitation attempted to be put upon this fee in the subsequent clauses of the will being inconsistent with the fee, are void. There are numerous decisions applying this rule but we do not think it should be applied here for the reason that it is manifest from the will that the testator did not intend to vest a fee in Michel. The rule has been applied only in cases where the testator intended to vest a fee in the devisee. and undertook to place limitation on the fee. It has no application where the testator does not create a fee. The will above quoted is not grammatically written; it is not

divided into clauses or items, and all that is said on any subject is not said connectedly. The will is so inartificially drawn that technical rules of construction can be of little aid to us in arriving at the testator's meaning. The object of all rules of construction is to effectuate the testator's intent, and where his real intent clearly appears upon the instrument as a whole, it should be carried into effect. What the testator meant here is not difficult to see. He had an afflicted son who could not take care of himself, and an unmarried daughter, these were to remain with their mother, who was given the land for life, and in case of her death, they were still to have a home on the place, the daughter until she married and the son as long as he lived. The testator knew the afflicted son could not make a living for himself on the place. He required somebody to take care of him, and so the testator wished his son, Marcus to stay on the farm with Michel, and manage it the best he could to make a living for Michel and himself. To insure that his afflicted son should not suffer and to insure that Marcus complied with his wish, he provided that if Marcus took care of his brother Michel, then at the death of Michel, Marcus was to have and to hold everything both real and personal belonging to Michel; his meaning as to the land, put in other words being that Michel should have the land for his support during his life and that at his death, Marcus should have the land if he had taken care of his brother during his life as directed by the will. While the will uses the words "I give to him on account of his afflictions" in speaking of the land, it is immediately followed by the direction that Marcus shall live on the land, and work it and the interest that Marcus is to take in the land is expressed in the clause in which he tells what shall be done with the land in case Marcus takes care of his brother. The sentence with regard to the daughter living on the land is separated from the previous sentences relating to the land by other matter, but in a will, all the clauses relating to any subject must be read together in determining what was the testator's intent on the subject. (Hunt v. Johnson, 10 B. Mon. 342, Howard v. Howard's Exor, 4 Bush, 494, Childers v. Logan, 23 R. 1239, Shropshire v. Gault, 26 R. 1197, Penn. Land Co. v. Justi, 28 R. 669, Adair v. Adair, 30 R. 857, Edmunds v. Edmunds, 31 R. 396, Patrick v. Patrick, 135 Ky. 307.)

It is insisted however for Marcus that his original petition was good, and that he is entitled to the land

at Michel's death although he may not have complied with the will and taken care of Michel as long as he lived. This is not the meaning of the will. The devise to Marcus is conditioned upon his taking care of his brother as long as he lived. It is a condition precedent to the vesting of the estate. The estate does not vest unless the condition is performed. In 2 Redfield on Wills 283, the rule is thus stated:

"It seems to be agreed that in regard to all conditions, whether in a deed or will or in simple contracts, where the condition is in the nature of a consideration for the concession, its performance will be regarded as intended to precede the vesting of any right, and so a condition precedent."

It is insisted that section 2066, Ky. St., has changed the rule:

"When any property shall be devised subject to or upon the payment by the devisee to another of a sum of money or his doing some other things, the latter shall have a lien on the legacy for the sum so to be paid, or for the value of the thing to be done."

Under this provision Michel would have had a lien on the land for his support if the land had been devised to Marcus subject to his support; but the land was devised to Michel not to Marcus during the life of Michel. In Pearcy v. Greenwell, 80 Ky. 616, land was devised, and the devisee was charged with the payment of a certain sum. This provision, it was held under the statute, made the money a lien on the land. In Low v. Ramsey, 135 Ky. 333, the devise was with the understanding that the devisee take and raise two children. This was a condition subsequent, and the land was simply charged with the support of the children. But in this case the devisee takes no interest in the land unless he took care of Michel substantially as directed in the will. The testator is careful to make his taking care of Michel a condition precedent to the estate; for his prime object was to insure his afflicted son in a comfortable support.

Judgment reversed and cause remanded to the circuit court with directions to overrule the demurrer to the petition as amended and for further proceedings consistent herewith.