## Hon v. Connelly.

(Decided March 2, 1934.)

L. M. ACKMAN for appellant.

F. A. HARRISON for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

G. W. Connelly died testate, a resident of Grant county, Ky., in 1928, leaving surviving him his widow, Hattie Connelly (now deceased), two sons, Kenneth R. Connelly and Phineas R. Connelly, and a daughter, Mrs. Althea Hon. His will was duly admitted to probate, and his son, Kenneth R. Connelly, was thereupon appointed and qualified as administrator and took immediate charge of the estate, which he proceeded to administer.

The will of the decedent, George W. Connelly, is as follows:

"I, George W. Connelly of Elliston Grant

County Kentucky, being sound of body and of deposing mind make this my last will and testament.

"1st. It is my will that all my personal property shall at my demise go to my wife Hattie Connelly to have and to hold (for) her life time.

"2nd. That after my death that my son Kenneth R. Connelly be and is hereby appointed Guardian for any and all business transactions made by the said wife Hattie Connelly relative to the fund of the estate and is to be adviser to the said Hattie Connelly in all business transactions.

"3rd. It is my will that I, G. W. Connelly assume all responsibility on all the notes secured by G. W. Connelly and Kenneth Connelly and given to Mt. Zion Deposit Bank and Verona Bank by Phineas R. Connelly and same is to be paid from the proceeds of my personal property, by my wife Hattie Connelly. In case I should become liable as the Indorser of the said Phineas R. Connelly and it is my will to release the said Kenneth R. Connelly as the indorser of Phineas R. Connelly and pay the same should he ever become liable for payment of the above notes as indorsers of Phineas R. Connelly.

"4th. It is my will that at the death of the said Hattie Connelly that all my personal property that still remains in her possession is to be divided so each of my children, Phineas R. Connelly, Kenneth R. Connelly and Althea Hon, will share equally in the division of same. It is my will that should either of the above named children at the death of my wife Hattie Connelly have received from the bounty of my estate more than the other then such heir is to receive so that each child shall receive an equal share in my estate, as a whole."

Testator's son, Phineas Connelly, owed him notes amounting to some $2,200, and also he and his son, Kenneth R. Connelly, were joint sureties on notes of Phineas Connelly aggregating some $3,600, which he owed several banks. These secured notes of Phineas Connelly having been paid by the administrator entirely out of the funds of the estate, under the direction of clause 3 of the will, a controversy has arisen between two of testator's children, wherein his daughter, the appellant, Mrs. Hon, contends that her brother, the appellee, Ken-

neth R. Connelly, the administrator, wrongfully claimed credit in his report of settlement for the full amount of some $3,600, paid by him entirely out of estate funds in satisfaction of these secured Phineas Connelly notes owing the banks. The appellee claims that his payment of these notes, even though made entirely with estate funds, was yet proper, for the reason that he was expressly so directed to pay them and released by clause 3 of the will from liability as a surety thereon. Appellant, on the other hand, insists that the appellee was chargeable with one-half of the amount so paid with estate funds in satisfaction of these surety notes, and should be required to account for one-half the amount thereof as for an advancement made him under clause 3 of the will, rather than permitted to retain such amount so paid as a bequest or gift made him thereunder, as such construction of clause 3 she insists is required in order to give effect to and carry out the intent of testator as declared by clause 4 of his will, directing that it was testator's will that, should either of his children, at the death of his wife, have received from the bounty of his estate more than the other, "then such heir is to receive so that each child shall receive an equal share in my estate, as a whole."

The narrow question thus presented upon this appeal is, therefore, whether or not the release of Kenneth Connelly from liability upon the Phineas Connelly notes as cosurety thereon, and the payment of these notes by the administrator entirely out of estate funds, as directed by clause 3 of the will, is to be construed as an advancement or as a gift thereby made his son, Kenneth Connelly. Upon the construction of clauses 3 and 4 of the will the decision of this question must turn.

It is disclosed by the record that Kenneth Connelly, as administrator of the estate of G. W. Connelly, duly made his report of final settlement with the Grant county court, wherein he charged and took credit for the payment of the Phineas Connelly notes owing the banks, aggregating the amount of some $3,600. It further appears that, upon the death of his mother, to whom the will gave a life estate in all his personal property (into which the estate had been converted), the funds thus released for distribution by termination of the life estate were thereupon paid the executor by her trustee, when he filed supplemental report, wherein he reported his receipt, distribution and final settlement of the estate

between his sister, the appellant, and himself in equal shares, and which report was duly approved and confirmed by the county judge. The appellant filed exceptions to the administrator's report of settlement, in which she charged testator's estate with the entire payment of the Phineas Connelly notes, and also complained of his later distribution of the estate, as shown by the supplemental report, in that the distributable part of the estate was equally divided between her and the appellee, without accounting for or deducting from his share thereof, the $1,800 paid by the administrator out of estate funds in satisfaction of his personal liability as joint surety upon the Phineas Connelly notes.

The court overruled these exceptions when the appellant took an appeal of the cause to the circuit court, where the county court's ruling was affirmed, it again adjudging that Kenneth R. Connelly recover an equal share of the estate left by the widow, Hattie Connelly, and, further that under the will of George W. Connelly the testator, assumed all obligations on the notes of Phineas Connelly on which Kenneth Connelly was co-surety with him, and that he (Kenneth Connelly) was not therefore personally liable therefor.

Appellant contends that clause 3 of the will, releasing the appellee from his suretyship liability of some $1,800 on the Phineas Connelly notes, should be construed as an advancement in such amount made to him by his father rather than as a gift, for which he would not be called upon to account, for the reason that, unless such construction is given this clause, the result would be that the appellee would receive an unequal part of the testator's estate by such amount, over and above the amount received by appellant. She argues that such construction of clause 3 is therefore patently erroneous, in that it results in defeating the clearly expressed intent and purpose of the testator as declared in clause 4 of his will, directing that his estate be equally divided between his three named children.

It is evident, as shown by the administrator's final settlement, that Phineas Connelly, one of testator's children, received from his father's estate, in the way of unpaid notes given for money loaned him, some $2,000 and also some $3,600, the amount of the secured notes he owed the banks, which were paid for him out of the funds of the estate. Thus he received a con-

siderable amount more than a child's share of the estate, and no claim in his behalf to participate in its further distribution is here involved. But appellant contends that, as to the $2,136.99, that being the amount reported by final settlement for distribution between appellant and appellee, the latter should be charged with the advancement of $1,800 made him by a "hotch potch" accounting therefor before undertaking to divide this remaining distributable estate equally between them.

Now turning our attention to the disposition of these contentions made by appellant and her argument that we are required to construe clause 3 of the will as making an advancement to appellee in order to avoid a construction of the will that will render nugatory its clause No. 4, it may be conceded at the outset that the general rules of construction are, as stated by appellant, that a will should be construed as a whole and effect given to each and all of its provisions, where it is possible, in order to carry out the intention of the testator as expressed in the whole instrument; that that construction of a will which produces equality is preferred to one that produces inequality; that it will not be presumed that a testator intended to prefer one of his children to others, unless such intent clearly appears from a fair reading of the will; and, further, that:

> "The fundamental rule for the construction of a will is to ascertain the intention of the testator and in arriving at that intention the courts should look to the language he employed. If in so doing his intention can be ascertained, that intention controls, regardless of collateral and subsidiary rules which may be employed in arriving at the intention when it is obscure."

State Bank v. Rose's Adm'r, 219 Ky. 562, 293 S. W. 1087, 1088; Darch v. Darch's Executor, 232 Ky. 666, 24 S. W. (2d) 558. Also to like effect was it said in Thurmond v. Thurmond, 190 Ky. 582, 228 S. W. 29, 31:

> "In construing a will it is likewise imperative to give effect to every part of it and every provision of it, if it is possible to do so. Deskins v. Williamson, 106 S. W. 258, 32 Ky. Law Rep. 539; Allen v. Allen, 108 S. W. 250, 32 Ky. Law Rep. 1157; Patrick v. Patrick, 135 Ky. 307, 122 S. W. 159; Duncan v. Berry's Adm'r, 142 Ky. 178, 133 S. W. 1148; Morse v. Cross, 17 B. Mon. 735; Coats' Ex'r v. L.

& N. R. R. Co., 92 Ky. 263, 17 S. W. 564, 13 Ky. Law Rep. 557; Peynado's Devisees v. Peynado's Ex'r, 82 Ky. 5. All clauses of a will relating to the same subject must be considered together in determining the testator's intention. Loy v. McClister, 141 Ky. 800, 133 S. W. 950.''

Though appellant invokes the aid of these admitted rules and conceded principles governing the construction of wills, their application to the question here presented does not, we conclude, give support to appellant's contention. So, while the rule of construction is as stated, that the will must be so construed as to give effect to the testator's intention, yet such intent is to be gathered from the language of the will itself, and not aliunde, where its language is unambiguous and clearly bespeaks the intention of the testator.

It cannot be here claimed that the language of clause 3 of the will is obscure or ambiguous, for it directly declares that the testator assumes all responsibility on the notes of Phineas Connelly, secured by him and Kenneth Connelly, owing the banks, and directs that, should Kenneth Connelly become liable thereon as indorser, it ''is my will to release Kenneth R. Connelly as the indorser of Phineas R. Connelly,'' and that his (the testator's) estate should pay the same. While by this clause the testator thus confers a benefit upon his son, Kenneth Connelly, in relieving him of a contingent liability upon the jointly secured notes, it may yet be said that he does not thereby give him or advance to him any part of his bounty. In the case of Brewer's Administrator v. Brewer, 181 Ky. 400, 205 S. W. 393, an advancement is defined as ''a gift made with the intention that it shall be charged to the donee in the distribution of the donor's estate, while a gift is made without any purpose that it shall be thereafter accounted for.'' See, also, Owsley, Sr., v. Sarah Owsley, 77 S. W. 394, 25 Ky. Law Rep. 1194; Stiff's Executor v. Stiff, 217 Ky. 716, 290 S. W. 718, 719. In the latter case this court said:

''If the petition be taken as an effort to charge appellee with the $1,250 as an advancement, under the provisions of section 1407, Kentucky Statutes, the action fails, because under it nothing may be deemed to be an advancement, except in a case where decedent has died either wholly or partially intestate.

The action was instituted by the executor of the last will and testament of the decedent. Her will was filed as an exhibit with the petition, and it discloses that she disposed of her entire estate thereby, and died neither wholly nor partially intestate.''

For like reason, we are of the opinion that section 1407, Kentucky Statutes, is not here applicable, for the reason that we find no intestacy existing in this case, while, as stated supra, the provisions of that section only apply in such case.

The rule as to what gifts of parent to child are to be construed as an advancement is thus stated in Ruling Case Law:

''Thus the doctrine of advancements is based on the assumed desire of the donor to equalize the distribution of his estate among his children. * * * The reason for this rule is obvious. * * * The testator is conclusively presumed to have considered the advancements and the bequests made in the will collectively, and to have made distribution as he intended to make it. He need not treat his heirs or devisees as standing on an equal footing, and may give to one more than to another, or may equalize the matter, as he sees fit in his will. When the ancestor makes his will, he expresses his intention as to equalizing his estate, and his desires should be followed.''

1 R. C. L. p. 657. Further, at page 665, the same volume, it is stated:

''In a broad sense two elements must be shown by competent evidence in order to establish an advancement—the gift by the parent to the child and the intention on the part of the donor that the gift shall be an advancement. These elements are to be established, except where a statute controls the character of proof, as any other question of fact. The burden of introducing evidence to show that a gift by a parent to his child constituted an advancement rests primarily on the party asserting such fact. * * * Whether the gift to a child by a parent was intended by the latter to be an advancement is a question of fact to be determined from all the circumstances surrounding the transaction.''

See, also, 18 C. J. sec. 201, p. 201.

It is to be noted that here the benefit given the ap-

pellee by clause 3 of the will was not a gift made by the parent to the child during his lifetime; that it was not an irrevocable donation to him of a part of his bounty then advanced to him in anticipation of the latter's sharing in the donor's estate; but it was a provision of the testator's will, releasing his son, Kenneth, from a future contingent liability as surety upon his brother's notes, whereby, through such arrangement, the testator provided for the contingent lessening of the amount of his distributable estate through directing the payment of the Phineas Connelly notes, entirely out of its funds upon the contingency of its later liability therefor, yet he did not then give thereby any part of his bounty to his son, Kenneth, nor did the latter receive an advancement of one cent of it thereby. It results, therefore, that, inasmuch as the parent did not thereby advance any part of his estate to the appellee by this clause of his will, or thereby permit the son to receive a part of the testator's bounty thereunder, it did not serve to give to him an unequal or greater share of his estate. The final report of settlement shows that the distributable estate was equally divided between the appellee and his sister, the appellant, share and share alike. Therefore the court's refusal to construe clause 3 of the will, as contended for by appellant, did not result in defeating testator's intent as declared in clause 4 of it, providing that his distributable estate should be equally apportioned among his children to the end that each of them should receive an equal share thereof. However, even should it be argued that the practical effect of giving such construction to the will resulted in testator's making a difference between his children under clause 3 of his will when so construed, it is sufficient to say that, in making such construction of clause 3 of the will, we do not destroy or fail to give effect to its clause 4, but rather harmonize it therewith, in such way as makes it possible to give effect to each provision of the will. Especially do we conclude that such construction of the will is clearly here warranted by the language of these clauses evidencing such intent of the testator also by reason of the fact that the testator was clearly within his legal right in so bequeathing his estate between them, if such was his wish, in favor of his son, inasmuch as he was permitted, when proceeding deliberately to wholly dispose of his estate by will, to make such indirect difference of benefits in the shares of his estate thereby devised his children by releasing his son,

Kenneth, from his cosurety obligations without such provision being given the effect of giving him an unequal share of his bounty to the prejudice of appellant. Testator did not thereby give Kenneth more, but in effect thereby only increased the advancement given his son Phineas by himself paying all, rather than one-half, of his notes executed the banks. This was no payment of half this amount to Kenneth, who received no part of it, but clearly was an advancement to Phineas of the extra amount assumed by testator.

Such being the holding and judgment of the lower court, and same being in accord with our views as herein expressed, it follows that the judgment of the learned chancellor should be, and it is, affirmed.