# Weddle v. Waddle's Administrator et al.
(Decided Nov. 7, 1935.)

B. J. BETHURUM and H. H. DENTON for appellant.

H. C. KENNEDY for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The sole question in this case is whether under the evidence $877.50 should be charged as an advancement

to Mrs. Grace Weddle in the settlement of the estate of her mother, Mrs. Mary A. Waddle. The money was used by Mrs. Weddle's daughter, then Miss Mary Elizabeth Weddle, in attending a conservatory of music.

It is conceded that under section 1407 of the Statutes a gift to a grandchild made while his parent is living is not chargeable as an advancement to the parent; that is, that an heir or distributee, to whose child a gift or devise may have been made, does not fall within the Statutes. Stevenson v. Martin, 74 Ky. (11 Bush) 485. However, if the ancestor's object was merely to enable his heir through his family to enjoy presently a part of the estate which is .destined to him eventually, and it is anticipated that it will be accounted for in the settlement of the estate, the fact that the heir's child was the immediate beneficiary can make no difference, and it is chargeable under the statute to the heir; the principle of the doctrine of advancement being equality of distribution among the heirs. Brewer's Adm'r v. Brewer, 181 Ky. 400, 205 S. W. 393; Thompson v. Latimer, 209 Ky. 491, 273 S. W. 65; Erdman's Adm'r v. Erdman's Ex'r and Trustee, 229 Ky. 162, 16 S. W. (2d) 756; 18 C. J. 914. And while a father or mother cannot make an advancement to a child by a gift to somebody else, yet, if the child consents that it be made directly to the third person on his account, it is properly chargeable to the child. Barber v. Taylor's Heirs, 39 Ky. (9 Dana) 84; Rains v. Hays, 2 Tenn. Ch. 669. With these rules in view we look to the evidence.

It may be observed that the principal part of the mother's estate consisted of a life estate in the father's property, with discretionary power to divide among or advance to the children any of it, with the provision that she should see to it that all of the children were kept equal, considering the advancements which the father had made to them. Mrs. Waddle had made certain advancements to three others.

Since she was not a distributee of the estate, the granddaughter, Miss Weddle, was not prohibited by section 606 of the Civil Code of Practice relating to testimony of a party in interest concerning a transaction with a decedent, from testfying to her grandmother's declarations; such declarations having been made prior to or contemporaneous with the gift or advancement being competent evidence. Aylor v. Aylor, 158

Ky. 713, 166 S. W. 216; McCray v. Corn, 168 Ky. 457, 182 S. W. 640; Hicks v. Oak's Adm'r, 233 Ky. 27, 24 S. W. (2d) 917. We state her testimony. While in high school she was staying temporarily with her grandmother about a year before her death. During this period they discussed her future, and in answer to her grandmother's inquiry as to what she wanted to do she told her that music interested her more than anything else and that she wanted to study it. Her grandmother responded that that was the thing to do. She told her grandmother that she did not think either of her parents would have the money, and her grandmother said, "If you want to go to music school I will send you." She told her grandmother that she did not want to go that way, as she would not make more than enough to support herself when she finished, and could not assume the debt. Her grandmother replied, "If your grandfather were living he would send you to the conservatory, and that is what I am going to do." Miss Weddle said that she told her grandmother if that was the way she felt about it she would take the money and go to school. During the course of the conversation she asked if arrangements could be made for the payment of her expenses at certain times so she would not have to encroach upon her principal; but could use her interest. Being assured that such an arrangement could be made, the grandmother told Miss Weddle to write whenever she needed the money and she would have it put to her credit in the bank. Four checks were made by Mrs. Waddle, payable to Miss Weddle, between September 2, 1927, and April 6, 1928. She deposited the first one, but it appears that her mother indorsed her name on the other three and had them deposited to her credit. She would write either to her mother or grandmother as she needed funds. At all times she regarded this as a gift to herself, and testified that her mother did not know about the arrangements until her grandmother told her.

In opposition, the present administrator testified that when most of the children and heirs were present at the home shortly after the mother's death, knowing that she had advanced money to some of them, he broached the subject, and Mrs. Weddle stated that she had told her mother that she was going to the bank and borrow the money to send Mary Elizabeth through school, and her mother responded that there was no use

going to the bank as she had some money on hand that was not bringing in anything and that she would advance the money and charge it against her part of the estate, and that she had said all right. Another brother corroborated that evidence, and further testified that Mrs. Waddle said that what was given Mary Elizabeth by her mother should be charged to her, and she supposed what had been advanced to Bob Bruce (a grandson) would be charged to Bob (a son). A brother-in-law's testimony is to the same effect. This evidence was competent, for it is not concerning any conversation or transaction with the decedent. Shortly after this, Mrs. Weddle signed a paper reciting that, whereas her mother "did advance to my daughter Mary E. Weddle the sum of $877.50 for educational purposes," she directed the administrator to charge her with that sum as an advancement.

In rebuttal Mrs. Weddle testified that there was a family discussion on that occasion, but that all she said was that she did not want anything but what was coming to her. After the institution of this suit to require a distribution of the estate, in which the question of advancement was raised, Mrs. Weddle had delivered to the administrator a statement revoking the direction given the former administrator, for the reasons that it was without consideration; the money had been a pure gift to her daughter; and the administrator had failed to make certain collections which would have saved her from loss.

It is a sound argument that the paper constituting a consent and direction to charge the sum to Mrs. Weddle as an advancement was invalid as being without consideration, and because subsequent events nor a mere declaration can make a legal advancement of what was not so in the first instance. Stevenson v. Martin, supra; Clarke v. Clarke, 56 Ky. (17 B. Mon.) 698; McClellan v. Sharp's Adm'r, 11 Ky. Law Rep. 525; Day v. Grubbs, 235 Ky. 741, 32 S. W. (2d) 327, 72 A. L. R. 323. But we think the statement was competent as evidence tending to corroborate the testimony of the admissions made by Mrs. Weddle that it was understood between her mother and herself that she should be charged with the money as an advancement.

There is not necessarily an inconsistency between the evidence of the granddaughter and the admissions

of the daughter, about which her brothers testified; both conversations could well have occurred. Of course, Mrs. Weddle's evidence, in effect, that she did not make the admissions, raises an issue. The decision turns upon a question of fact, to be determined from all the circumstances as well as the particular testimony. Hon v. Connelly, 253 Ky. 181, 69 S. W. (2d) 23. Under the familiar rule as to the effect to be given the decision of a chancellor on a matter of fact, we are not inclined to disturb his finding.

Wherefore, the judgment is affirmed.