**MILLS' ADM'X et al. v. MILLS et al.**

Court of Appeals of Kentucky.

Feb. 26, 1954.

T. T. Burchell, Manchester, for appellants.

Roy W. House, Manchester, for appellees.

CULLEN, Commissioner.

This action, involving settlement of the estate of John T. Mills, deceased, presents a number of complicated questions. The complications arise from the fact that over a period of years before John T. Mills' death, and during the proceedings in the settlement suit in the circuit court after his death, there was a general disregard by everyone concerned of the law relating to real property and conveyancing. The briefs are not very helpful.

There are questions raised on this appeal concerning the alleged conversion of certain items of personal property, including two mules, a washing machine, some store goods, a stove and a refrigerator, and concerning a debt claimed to be owed to the estate by Homer Mills, a son of John T. Without elaboration, we will say simply that we find no reversible error in the circuit court's judgment with respect to these items.

The main contention concerns the ownership of various parcels of real estate, and

the widow's dower rights. Aligned on one side are the widow and a daughter; on the other side are two sons and a grandson (child of one of the sons). One of the sons, Homer, has an assignment from his brother, Clarence, of any interest Clarence might have in the estate.

Prior to the death of John T. Mills, two tracts of land were conveyed to Leo Mills, infant son of Homer and grandson of John T. One of these tracts, which we will call the Smallwood Tract, was conveyed to Leo by Chester Smallwood, at the direction of John T. Mills. It is claimed by the widow that this tract belonged to her and John T. jointly, by virtue of a deed executed by Smallwood in 1930, which subsequently was lost or stolen. The other tract, which we will call Tract B, purportedly was conveyed to Leo by John T., without his wife's signature, a few weeks before John T.'s death. The widow claims this deed is a forgery.

In the settlement suit, Leo was made a party defendant, but although the pleadings showed that he was an infant about three years of age, and had no statutory guardian, the suit proceeded to final determination without there being a guardian ad litem appointed for him. The court adjudged that Leo was the owner of the two tracts, subject to the widow's dower interest, but that the value of the improvements placed on the two tracts by Homer Mills should be excluded in allotting dower.

■ We think it is clear that the court erred in its judgment concerning the Smallwood Tract. The evidence was undisputed that around 1930 Smallwood did execute a deed to this tract, either to John T. Mills alone or to John T. and his wife jointly. The deed was delivered, but not recorded. The widow says that Homer Mills stole and destroyed it. The widow testified positively that she was named as a joint grantee in the deed. Smallwood could not remember whether or not this was so. Homer admitted seeing the deed, but did not state positively that his mother's name was not in the deed.

Under the proof, there was nothing to contradict the widow's testimony that she was named as a joint grantee in the 1930 deed, and therefore the court should have adjudged that she was the owner of an undivided one-half interest in this tract, plus a dower interest in the other one-half. Clearly the deed from Smallwood to Leo Mills was a nullity, because Smallwood had no title at the time. Mills v. Epperson, Ky., 259 S.W.2d 687.

■ With respect to the improvements on the Smallwood Tract, there was evidence justifying a finding that most of the improvements were made by Homer Mills, while he occupied the tract with his parents' consent during most of the period from 1930 to his father's death in 1950. However, it is admitted by Homer that there was a small house on the premises to begin with. We think it would be proper, in view of the circumstances under which the improvements were made by Homer, to allow him or his son Leo a lien on the land for the amount by which the value of the land was increased by such improvements.

■ Homer makes some claim of title to the Smallwood Tract by adverse possession, but it is clear that his occupancy of the premises from 1930 to 1950 was by permission of his parents, and not under a claim of title. He also makes a claim of an oral gift of the land, which of course would not be enforcible. Furthermore, he contends that he paid part of the original purchase price of the land, but we think the evidence establishes only that he paid Smallwood $50 for executing the deed to Leo.

■ Although this is an equity case, we cannot direct the judgment to be entered, because Leo has not been represented by a guardian ad litem. Upon remand of the case, the court should appoint a guardian ad litem, and permit him to assert any claim of ownership he may have to the Smallwood Tract, and any defenses he may have to the widow's claims of title. If the assertions and defenses, and the evidence supporting them, are substantial-

ly the same as upon the first trial, the court should adjudge the widow the owner of an undivided one-half interest, plus a dower right in the other one-half, with title to the latter one-half being in the heirs of John T. Mills. The court also should hear evidence as to the amount by which the value of the tract was increased by improvements made by Homer, and award him or Leo a lien for that amount.

■ In passing this phase of the case, it perhaps should be mentioned that Homer contends his mother relinquished any claim to her husband's lands in Clay County, where their home was, by reason of an oral separation agreement entered into some three years before the husband's death, pursuant to which she deeded to her husband certain land she owned in Clay County, and he deeded to her certain land he owned in Knox County. However, there was no formal, written relinquishment by her of her rights in any land her husband owned in Clay County, and it is a settled rule of law that interests in real estate cannot be conveyed away orally. See Wigginton v. Leech's Adm'x, 285 Ky. 787, 149 S.W.2d 531.

■ Concerning Tract B (the one conveyed by John T. Mills to Leo), the evidence supports the finding of the chancellor that the deed was in fact executed by John T. Mills, although there was some evidence that the deed was a forgery. No fraud or duress was shown. Although the pleadings and evidence indicate that there was no consideration for the deed, other than love and affection, this is immaterial. There was no effort by the heirs to have the value of this tract charged against Homer as an advancement, as probably it should have been. See Hamilton v. Moore, 70 S.W. 402, 24 Ky. Law Rep. 982; Weddle v. Waddle's Adm'r, 261 Ky. 208, 87 S.W.2d 383. We think the court properly adjudged title to this tract to be in Leo, subject to the widow's dower.

■ Aside from the two tracts hereinbefore mentioned, John T. Mills owned at the time of his death three other tracts in Clay County, including the "home place". The widow claimed to own an undivided one-half interest in the home place, and a dower interest in the remaining one-half and in the other two tracts. However, at the time of the trial she was unable to produce any evidence of her joint ownership of the home place. She did make a vague claim of a homestead right, but it is clear that she had abandoned any right of homestead by not occupying the property.

The court adjudged that the widow was entitled to dower in the home place, but was not entitled to dower in the other two tracts because she had deeded them to her husband, some three years before his death, in exchange for some lands he owned in Knox County. The court ordered the three tracts sold, to pay administration expenses and debts. The tracts were appraised as a single unit at a value of $1,000, and were sold as a single unit for a price of $2,246.75. From the proceeds of sale there were deducted costs and expenses in the amount of $503.95, and debts in the amount of $1,342.94, leaving a balance of $399.86. The court adjudged that the commuted value of the widow's dower interest was $35.44, and directed that this sum be paid out of the proceeds of sale.

After the report of sale had been filed, and the order of confirmation entered, the widow moved to set aside the sale, and the order confirming it, on the ground of newly discovered evidence, consisting of a title bond, executed in 1914, by which Woodson Mills and wife had covenanted to convey to "John T. Mills and wife Alley Mills" their interest in a tract of land which appears to be the same tract subsequently occupied by John T. and his wife as their "home place". An affidavit in support of the motion stated that Homer Mills had taken all of John T. Mills' important papers, and "after much searching" the widow finally had discovered the title bond among her old records. The court overruled the motion, without giving any reason for so doing.

We think the court erred in several respects in its orders and judgments concern-

ing the home place and the other two tracts owned by John T. Mills at the time of his death.

In the first place, there was no valid basis for denying the widow her dower interest in the two tracts conveyed to her husband in exchange for land in Knox County. Her dower interest could be relinquished only by a writing conforming with the requirements imposed by law for the disposition of real property. Wigginton v. Leech's Adm'x, 285 Ky. 787, 149 S.W.2d 531.

■ Secondly, the debts of the decedent and expenses of administration should not have been deducted from the proceeds of sale before computing the value of the widow's dower interest. Maryland Casualty Co. v. Lewis, 276 Ky. 263, 124 S.W.2d 48. Actually, we are at a loss to determine how the court fixed $35.44 as the value of the dower interest, because the court was purporting to allow dower in only one of three tracts which were sold as a single unit without separate valuation.

■ In the third place, we think the motion and affidavit of the widow showed just cause for setting aside the sale on the ground of newly discovered evidence. She was entitled to a full and fair hearing on the question of whether she was the owner of an undivided one-half interest in the home place. We are reluctant to compel the sale to be set aside, and had the three tracts been valued separately on the sale there would be no need to set it aside, but under the circumstances there appears to be no other alternative. However, if the parties can agree as to what portion of the sale price represents the value of the home place, or if the court determines after hearing all the evidence that the widow did not have title to an undivided one-half interest in the home place, perhaps the sale can be permitted to stand.

There is some suggestion that the fee of $250 allowed to the attorney for the administratrix (the widow) is inadequate. We do not agree.

It was contended in the lower court that Homer Mills cut timber from the land owned by the decedent, pending the sale by the master commissioner. Oral evidence was taken by the court on this question, and the court overruled a motion to hold Homer accountable. The evidence so taken is not in the record on appeal, so we have no basis for determining whether the court erred in its decision.

The judgments appealed from are reversed, to the extent indicated in this opinion, with directions for proceedings in conformity with this opinion. Except as so indicated, the judgments are affirmed.